2017 PA Super 330

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| STEVEN R. MILLER, | : | |
| | : | |
| Appellant | : | No. 3130 EDA 2015 |

Appeal from the Judgment of Sentence June 25, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No.: CP-51-CR-0011715-2014

BEFORE: BENDER, P.J.E., DUBOW, J., and MUSMANNO, J.

OPINION BY DUBOW, J.: **FILED OCTOBER 17, 2017**

Appellant, Steven R. Miller, appeals from the Judgment of Sentence entered by the Philadelphia County Court of Common Pleas following his convictions after a jury trial of Aggravated Assault, Simple Assault, and Possessing an Instrument of Crime ("PIC").[1] After careful review, we affirm on all issues Appellant raised before the trial court, and remand for consideration of Appellant's after-discovered evidence claim.

On October 6, 2013, Appellant, an inmate at Curran-Fromhold Correctional Facility in Philadelphia, was using a phone in the prison's telephone bank. Khayree Murray, a fellow inmate, approached Appellant and asked to use one of the phones. Correctional Officers Denise Irving and Eddie

---

[1] 18 Pa.C.S. § 2702; 18 Pa.C.S. § 2701; and 18 Pa.C.S. § 907, respectively.

Rosa and Correctional Sergeant Joyce Cooper observed Appellant attack Murray. Appellant stabbed Murray several times with "a sharp long screw rigged with sharp ridges and a rubber band wrapped in a ripped T-shirt" in the head, back, and ear. Officer Rosa immediately intervened, separated the two men with the help of Officer Irving, and used pepper spray to subdue Appellant. Officers recovered the makeshift weapon from the ground after Appellant dropped it. Officer Rosa testified that Murray was in shock and that he did not observe Murray strike Appellant.

Murray attempted to downplay his injuries, and told officers that he fell down some stairs. Murray sustained life-threatening injuries, which included three stab wounds to the back, two puncture wounds to the base of his neck, wounds to his back, back of the head, and left hand, and lacerations to his ear and cheek. Murray's injuries required eight sutures. Sergeant Cooper decided to transport Murray to the hospital for treatment. Appellant had no injuries, but he was treated for pepper spray in his eyes and placed in solitary confinement.

While walking with Officer Rosa through the prison shortly after the stabbing, Appellant stated, "If you didn't pepper spray, you would have been the next victim."[2] Trial Court Opinion at 5. In recorded prison phone calls, Appellant subsequently made several inculpatory statements, boasted of his

_____

[2] Officer Rosa omitted this statement from his official written report of the incident.

- 2 -

violent reputation in the prison as a result of the attack, and repeated a rumor that there was a bounty on Murray's head because he was a snitch.

Appellant proceeded to a jury trial. Murray refused to testify at trial and the trial court held him in contempt. Appellant testified and claimed that he acted in self-defense. Although Appellant claimed that Murray attacked him first with the weapon, Appellant admitted that he never feared that Murray would kill him.

On June 25, 2015, the jury convicted Appellant of Aggravated Assault, Simple Assault, and PIC. On that same day, the trial court imposed an aggregate term of 8 to 20 years' incarceration. Appellant filed a Post-Sentence Motion, which the trial court denied on October 2, 2015.

Appellant filed a timely Notice of Appeal. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant presents eight issues on appeal:

1. Were the convictions for [Aggravated Assault, Simple Assault, and PIC] not supported by sufficient evidence? Was the evidence speculative, contradictory and inconsistent such that the verdicts were not supported by sufficient evidence?

2. Were the convictions for [Aggravated Assault, Simple Assault, and PIC] against the weight of the evidence? Was the evidence speculative, contradictory and inconsistent?

3. Did the Assistant District Attorney err in his opening statement by stating that [Appellant] for the same conduct was disciplined by the prison and given the punishment of sixty days in solitary confinement, thereby improperly tainting the jury by the prison disciplinary finding? Further, did the District Attorney err in questioning the correctional officer about [Appellant] being placed in the solitary cell as punishment for this matter? Did the District

Attorney err in his closing speech when he gave his personal opinion that the correctional officer was telling the truth and was completely candid and honest with the jury? Did these errors individually and cumulatively deny [Appellant] his right to due process and a fair trial? Did Judge Coyle err in not granting a mistrial?

4. Did Judge Coyle err when instructing the jury by not giving an adverse inference charge because the alleged victim, [Murray], refused to testify and pled the Fifth Amendment? Did Judge Coyle err in refusing to give such an adverse inference charge to the jury about [Murray's] lack of testifying?

5. Did Judge Coyle err in allowing the correctional officer to testify that [Appellant] said to him at the time, "It's a good thing you broke it up because I would have assaulted you also" and "If you didn't pepper spray, you would have been the next victim." Did Judge Coyle err since this statement was not made and told to anyone until the third day of trial, the officer had never even made such a statement in any of the police reports or discovery or during his testimony at the preliminary hearing previously and the defense strategy had already been set? Did the Court err in allowing this testimony and should a new trial be granted as a result?

6. Did Judge Coyle err in allowing the transcript of the prison telephone conversation of [Appellant] to be sent back to the jury during deliberations since it had already been played to the jury, allowing this testimony to remain with the jury during deliberation and unduly emphasizing this testimony, which was unfair to [Appellant]? Further, did Judge Coyle err in allowing the telephone conversations to be admitted at all since the conversations seemed to suggest [Appellant] was a bad person and people were after him, thereby tainting the jury?

7. Did Judge Coyle err in precluding [Appellant] from introducing the fact that the alleged victim, [Murray] (an inmate) had attacked another inmate in a similar fashion at a prison phone bank and had pending charges on that assault? Did the Court err since this would show a common scheme, plan and design, and would show intentional assault by the alleged victim?

8. Did the Superior Court err in not remanding the case to the trial judge and should a new trial be granted based on the after

discovered evidence of two witnesses who observed the events and would have confirmed [Appellant's] version?

Appellant's Brief at 7-11.

## Sufficiency of the Evidence

Appellant first challenges the sufficiency of the evidence supporting his convictions for Aggravated Assault, Simple Assault, and PIC. We review claims regarding the sufficiency of the evidence by considering whether, "viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Melvin***, 103 A.3d 1, 39 (Pa. Super. 2014). Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence. ***Id***. In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder. ***Id***. at 39-40.

Self-Defense

Appellant claims that the Commonwealth failed to disprove that Appellant acted in self-defense, and argues that this negates Appellant's criminal liability on all charges. Appellant's Brief at 39.

When one employs deadly force, as Appellant did, the elements of a claim of self-defense are that the individual (1) reasonably believed that force was necessary to protect himself against death or serious bodily injury; (2)

was free from fault in provoking the use of force against him; and (3) did not violate any duty to retreat. ***Commonwealth v. Mouzon***, 53 A.3d 738, 740 (Pa. 2012); ***see also*** 18 Pa.C.S § 505(b)(2).

A defendant does not have a burden to prove a claim of self-defense. ***Commonwealth v. Torres***, 766 A.2d 342, 345 (Pa. 2001). Once a defendant introduces some evidence to justify a finding of self-defense, then the issue is properly before the fact-finder and the Commonwealth bears the burden to disprove the defense beyond a reasonable doubt. ***Id.***

In this case, we conclude that Appellant's testimony—that Murray attacked him first using the weapon—provided "some evidence" to support a finding of self-defense. ***See id***. If Murray provoked the fight, Appellant could have reasonably believed that force was necessary to protect himself.

Once the issue of self-defense was before the fact-finder, it was the Commonwealth's burden to disprove the defense beyond a reasonable doubt. ***See id***. The Commonwealth presented sufficient evidence that Appellant initiated the fight unprovoked after Murray asked to use the phone, that Appellant unreasonably believed that force was necessary to protect himself against death or serious bodily injury, that Appellant acted unreasonably in stabbing Murray repeatedly, and that Appellant had a duty to retreat without using the weapon. The Commonwealth presented testimony from several eyewitnesses, as well as Appellant's own inculpatory statements about, *inter alia*, his motive for stabbing Murray.

After a review of the evidence in the light most favorable to the Commonwealth, we conclude that the Commonwealth disproved beyond a reasonable doubt that Appellant acted in self-defense.

Aggravated Assault and Simple Assault

We next address Appellant's challenges to the sufficiency of the evidence supporting his convictions for Aggravated Assault and Simple Assault. "A person is guilty of [A]ggravated [A]ssault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). The Crimes Code defines "Serious bodily injury" as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. **See Commonwealth v. Walls**, 950 A.2d 1028, 1032 (Pa. Super. 2008) (holding that evidence that the appellant repeatedly stabbed the victim causing cuts, scratches, and lacerations to the upper torso sufficient to sustain a conviction for aggravated assault).

"A person acts intentionally with respect to a material element of an offense when ... it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i). "As intent is a subjective frame of mind, it is of necessity difficult of direct proof." **Commonwealth v. Matthews**, 870 A.2d 924, 929 (Pa. 2005) (citations

- 7 -

omitted). "[I]ntent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." *Id. See also Commonwealth v. Gray*, 867 A.2d 560, 568 (Pa. Super. 2005) (holding that infliction of multiple stab wounds with screwdriver demonstrated intent to inflict serious bodily injury).

In Pennsylvania, a person is guilty of Simple Assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" 18 Pa.C.S. § 2701(a)(1). The Crimes Code defines "Bodily injury" as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

The evidence is more than sufficient to sustain Appellant's convictions for Aggravated Assault and Simple Assault. It was well within the province of the jury to conclude that Appellant intended to kill or seriously injure Murray when Appellant repeatedly stabbed him with a deadly improvised weapon after Murray asked to use the telephone. Appellant continued his attack until correctional officers intervened to separate Appellant from Murray. Appellant finally stopped when a correctional officer used pepper spray to subdue him.

In addition, Appellant repeatedly provided inculpatory statements to corrections officers and to others while speaking on the prison phones, including statements about why he attacked Murray. The jury could also reasonably infer Appellant's criminal intent from the surrounding circumstances; namely, that Appellant, a prisoner, possessed an improvised contraband weapon inside the prison. The Commonwealth also submitted

sufficient evidence of Murray's serious injuries, his hospitalization, and his medical treatment, to which Appellant stipulated at trial. In contrast, there was ample testimony, documentary evidence, and photographs of Appellant's lack of injuries.

Appellant focuses his argument on the contradictory testimony by various corrections officers. This aspect of his argument challenges the weight of the evidence, and ignores our standard of review applicable to sufficiency challenges.[3] We must view all of the evidence in the light most favorable to the Commonwealth as verdict winner and we may not reweigh the evidence and substitute our judgment for that of the fact-finder. *See Melvin*, *supra* at 39-40.

Viewing the totality of the evidence in the light most favorable to the Commonwealth as the verdict winner, it is clear that the Commonwealth proved each element of Aggravated Assault and Simple Assault. *See Walls*, *supra* at 1032; *Gray*, *supra* at 568.

PIC

We next analyze Appellant's conviction for PIC. Appellant once again avers that the Commonwealth failed to disprove that Appellant acted in self-defense, and argues that this negates Appellant's criminal liability for the PIC charge. Appellant's Brief at 8.

---

[3] We discuss Appellant's challenge to the weight of the evidence *infra*.

To sustain a conviction for PIC, the Commonwealth had to prove that Appellant (1) possessed an instrument of crime, (2) with intent to employ it criminally. *See* 18 Pa.C.S. § 907(a). Under the statute, an "instrument of crime" is defined, in pertinent part, as "[a]nything specially made or specially adapted for criminal use." 18 Pa.C.S. § 907(d). While a fact-finder can infer intent from the surrounding circumstances, intent cannot be inferred from "mere possession of the weapon." *In re A.C.*, 763 A.2d 889, 891 (Pa. Super. 2000). Further, a fact-finder cannot reasonably infer criminal intent if a defendant used a weapon solely for self-defense. *Id.*

A review of the record in the light most favorable to the Commonwealth, giving the Commonwealth all favorable inferences, supports the trial court's conclusion that there was sufficient evidence to convict Appellant of PIC. While a fact-finder cannot infer criminal intent from mere possession of a weapon, this is a unique set of circumstances where Appellant is incarcerated and there is no legal purpose to possess a weapon in prison. Possession of a weapon by a prisoner in prison is "inherently criminal" and the fact-finder could infer Appellant's criminal intent from the surrounding circumstances, namely that Appellant was incarcerated and possessed a weapon. *See id.*

Further, there was substantial evidence that Appellant actually employed the weapon criminally when he stabbed Murray. We have already addressed Appellant's self-defense claim as unsupportable; accordingly, that

theory of relief does not negate Appellant's criminal liability for this charge. Thus, we conclude that the Commonwealth proved each element of PIC.

Viewing the totality of the evidence in the light most favorable to the Commonwealth as the verdict winner, it is clear that the Commonwealth proved each element of Aggravated Assault, Simple Assault, and PIC. Appellant's sufficiency challenges, thus, fail.

**Weight of the Evidence**

We next address Appellant's assertion that the jury's verdict was against the weight of the evidence because Officer Rosa's testimony "was absolutely and totally inconsistent, contradictory, unreliable[,] and speculative." *See* Appellant's Brief at 46-47.

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015), *appeal denied*, 138 A.3d 4 (Pa. 2016) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa. Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert, supra* at 546.

Moreover, "Appellate review of a weight claim is a review of the exercise of discretion, not the underlying question of whether the verdict is against the weight of the evidence." *Id.* at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546. "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.*

Furthermore, "in order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id*. (quotation marks and citation omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be believed." *Commonwealth v. Thompson*, 106 A.3d 742, 758 (Pa. Super. 2014). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. *Commonwealth v. Widmer*, 744 A.2d 745, 751 n.3 (Pa. 2000).

Appellant essentially asks us to reassess the credibility of the eyewitnesses and reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience.

We conclude the trial court properly exercised its discretion in concluding that the jury's verdict was not against the weight of the evidence. Accordingly, Appellant is not entitled to relief on his weight claim.

### Prosecutorial Misconduct

Appellant's next issue involves allegations of prosecutorial misconduct during opening statements and closing arguments. In his opening statement, the prosecutor described the lack of physical injuries to Appellant and commented, in passing, that the prison placed Appellant "in the hole for sixty days." N.T. Trial, 6/23/15, at 19. During closing arguments, Appellant objected to the prosecutor's statement that Officer Rosa "was completely honest and candid with you." N.T. Trial, 6/25/15, at 36. The trial court sustained Appellant's objections made after both comments, but denied his requests for a mistrial. *Id.*

We review a trial court's denial of a mistrial motion for abuse of discretion. *Commonwealth v. Bryant*, 67 A.3d 716, 728 (Pa. 2013). When considering such a contention, "our attention is focused on whether the defendant was deprived of a fair trial, not a perfect one, because not every

inappropriate remark by a prosecutor constitutes reversible error." *Commonwealth v. Noel*, 53 A.3d 848, 858 (Pa. Super. 2012) (citation omitted). "It is also well established that a trial court may grant a mistrial only where the incident upon which the motion is based is of such a nature that its unavoidable effect is to deprive the defendant of a fair trial by preventing the jury from weighing and rendering a true verdict." *Bryant, supra* at 728 (quotation marks and citation omitted).

"While it is improper for a prosecutor to offer any personal opinion as to the guilt of the defendant or the credibility of the witnesses, it is entirely proper for the prosecutor to summarize the evidence presented, to offer reasonable deductions and inferences from the evidence, and to argue that the evidence establishes the defendant's guilt[.]" *Commonwealth v. Burno*, 94 A.3d 956, 974 (Pa. 2014).

Moreover, "[i]n determining whether the prosecutor engaged in misconduct, we must keep in mind that comments made by a prosecutor must be examined within the context of defense counsel's conduct. It is well settled that the prosecutor may fairly respond to points made in the defense closing." *Commonwealth v. Hogentogler*, 53 A.3d 866, 878 (Pa. Super. 2012); *see also Commonwealth v. Carson*, 913 A.2d 220, 236 (Pa. 2006) (stating that a prosecutor is entitled to fairly respond to arguments made by defense counsel in closing argument). In fact, "[e]ven an otherwise improper

comment may be appropriate if it is in fair response to defense counsel's remarks." ***Burno***, ***supra*** at 974.

Opening Statement

In this appeal, Appellant claims the court should have declared a mistrial because the opening statements unfairly "brought to the attention of the jury that there had been a disciplinary determination that [Appellant] was at fault and, therefore, he was placed in punitive solitary confinement as punishment." Appellant's Brief at 51-52.

We disagree that this statement represents actionable prosecutorial misconduct. The context of the prosecutor's entire statement shows that he was explaining to the jury what he expected the evidence to show, namely, that comparing the extent of the victim's serious injuries and subsequent hospitalization with Appellant's minimal and temporary pepper spray impairment would show that Appellant was the aggressor and disprove his self-defense claim. Appellant directs us to no authority prohibiting a prosecutor from mentioning a defendant's detention in solitary confinement. Moreover, we note that the trial court sustained Appellant's objection, and the prosecutor moved on to address other subjects in his opening statement.

Appellant's remaining complaint is that the trial court erroneously rejected his request for a mistrial at this early stage of the proceedings against him. The trial court denied the mistrial after determining that the prosecutor had not acted improperly because the statements highlighted the comparative

injuries between Appellant and the victim.  Further, the trial court concluded that its preemptive curative instructions before opening statements appropriately cautioned the jury that the statements of counsel did not constitute evidence.  Trial Court Opinion at 15.  We agree, and conclude that the trial court did not abuse its discretion in denying Appellant's request for a mistrial during opening statements.

Closing Argument

With respect to Appellant's challenge to the prosecutor's closing argument regarding Officer Rosa's testimony, we conclude it was a fair response to Appellant's counsel's repeatedly attacking Officer Rosa's credibility, both in his opening statement and closing argument.  *See*, *e.g.*, N.T. Trial, 6/23/15, at 28-29 ("The key officer is Officer [Rosa] . . .  Officer Rosa doesn't really see what's happening."); *id.* at 30 ("Officer Rosa only changed his testimony to say, [y]eah, my client was on the phone.  And that's a big difference . . .  Now, Mr. Rosa doesn't really see it because he's watching the door.  That's why he's confused."); *id.* at 31 ("Because you'll hear Officer Rosa saying everything happened at 6:30, and then it changes to 5:30.  It's really 5:23."); N.T. Trial, 6/25/15, at 13 ("The critical thing of both Ms. Irving and Ms. Cooper is they totally contradict Mr. Rosa."); *id.* at 14 ("they totally contradict Mr. Rosa."); *id.* at 15 ("Now, what's wrong with Mr. Rosa's testimony[?]  The Problem is – besides totally contradicting his two colleagues – there wasn't a fight . . . he got the events totally backward.  Absolutely

backwards."); *id.* at 16 ("If I didn't subpoena those records in, who knows where we would be because Rosa was wrong. Rosa got them confused. And that's critical in these matters."); *id.* at 19 ("Now, we know that totally contradicts the other two officers. In other words, he doesn't know. He's either lying . . . or he's mistaken."); *id.* at 29 ("And that's consistent with what Rosa says. Not now, but it's consistent with what Rosa said."); *id.* at 31 ("and you go back to the confusion of Mr. Rosa, which you know we straightened out with the phone records…").

Moreover, the trial court carefully instructed the jury on how to evaluate the arguments of counsel, how to consider and weigh the testimony presented at trial, and how to evaluate and weigh conflicting evidence. *See* N.T. Trial, 6/25/15, at 2-3, 56-63. We, therefore, conclude that the trial court did not abuse its discretion in denying Appellant's requests for a mistrial based on Appellant's claims of prosecutorial conduct.

**Refusal to Give "Adverse Inference" Jury Instruction**

In his next issue, Appellant avers that the trial court erred in failing to instruct the jury that they could draw an adverse inference against the Commonwealth based on the victim's refusal to testify at trial. Appellant's Brief at 56.

Our standard of review in assessing a trial court's jury instruction is as follows. "When evaluating the propriety of jury instructions, this Court will look to the instructions as a whole, and not simply isolated portions, to

determine if the instructions were improper." ***Commonwealth v. Antidormi***, 84 A.3d 736, 754 (Pa. Super. 2014) (citations and quotation omitted). A trial court has "broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." ***Id.*** (citations and quotation omitted). "Only where there is an abuse of discretion or an inaccurate statement of the law is there reversible error." ***Id.*** (citations and quotation omitted).

"The trial court is not required to give every charge that is requested by the parties and its refusal to give a requested charge does not require reversal unless the Appellant was prejudiced by that refusal." ***Commonwealth v. Sandusky***, 77 A.3d 663, 667 (Pa. Super. 2013).

A missing witness instruction may be given in limited circumstances. "When a potential witness is available to only one of the parties to a trial, [] it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable." ***Commonwealth v. Boyle***, 733 A.2d 633, 638 (Pa. Super. 1999) (citation and quotation omitted). However, this Court has clarified at least six circumstances where a party is not entitled to the missing witness adverse inference instruction:

1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;

2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

**Boyle**, **supra** at 638 (citation omitted).

Here, the Commonwealth had the victim brought to the courthouse to testify. According to the trial court, the victim, still an inmate, "repeatedly refused to even leave the sheriff's cell room located in the basement" of the courthouse. Trial Court Opinion at 19. The trial court ordered the victim physically removed from the cell room in shackles and put on the witness stand to testify as a witness for the Commonwealth. *Id.* The victim refused to state his name or otherwise cooperate, despite numerous warnings from the trial court. *Id.* The trial court found the victim in direct criminal contempt and removed him from the courtroom. *Id.*

Appellant requested that the trial court provide a "missing witness" instruction to the jury that, based on the victim's refusal to testify, it could draw an inference that the victim's testimony would have been adverse to the

Commonwealth. *Id.* The trial court denied Appellant's request because the Commonwealth did call the victim to the stand to testify and the victim was equally available or unavailable to both parties.

Our review of the record supports the trial court's assessment. The victim was equally available to both the Commonwealth and Appellant at trial. Moreover, the Commonwealth actually called the victim at trial and put him on the witness stand. The Commonwealth had no control over the victim's refusal to cooperate and answer questions. Thus, Appellant was not entitled to a missing witness adverse inference instruction and the trial court did not err in refusing to provide such an instruction to the jury. We discern no abuse of the trial court's discretion.

## Appellant's Inculpatory Statements

In his next issue, Appellant avers that the trial court erred in admitting his own incriminating statement made to Officer Rosa—that Appellant would have attacked Officer Rosa next if Officer Rosa had not pepper sprayed him— because Officer Rosa had not disclosed the statement until the third day of trial and the Commonwealth notified Appellant too late. Appellant's Brief at 60-62.[4]

_____

[4] Appellant does not allege in his Brief that the Commonwealth had intentionally withheld the inculpatory statement in any way. Though Appellant mentions the discovery rules in passing in his Brief, this aspect of his claim is undeveloped and, thus, waived. Pa.R.A.P. 2119; *see also Commonwealth v. Perez*, 93 A.3d 829, 838 (Pa. 2014) (undeveloped arguments without supporting citations are waived).

The "[a]dmission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion." **Commonwealth v. Tyson**, 119 A.3d 353, 357 (Pa. Super. 2015) (citation and quotation omitted). "[A]n abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,] or partiality, as shown by the evidence or the record." **Commonwealth v. Cameron**, 780 A.2d 688, 692 (Pa. Super. 2001) (citation and quotation omitted).

Pre-trial discovery in criminal cases is governed by Pennsylvania Rule of Criminal Procedure 573. The rule lists certain items and information that are subject to mandatory disclosure by the Commonwealth when they are: (1) requested by the defendant, (2) material to the case, and (3) within the possession or control of the prosecutor. These items include the substance of any inculpatory statements and the identity of the person to whom it is made when in the possession of the Commonwealth. **See** Pa.R.Crim.P. 573(B)(1)(b).

Rule 573 also imposes a continuing duty to disclose: "If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses,

- 21 -

such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness." Pa.R.Crim.P. 573(D).

"[W]here the evidence is equally accessible or inaccessible to both the Commonwealth and the defense, the defense cannot use the discovery rules against the Commonwealth for its failure to produce the evidence." **Commonwealth v. Dent**, 837 A.2d 571, 585 (Pa. Super. 2003) (citation omitted).

In the instant case, in reviewing his paperwork in preparation for his trial testimony, Officer Rosa noticed his omission of the statement Appellant had made to him, and immediately notified the prosecutor during trial, who then immediately notified Appellant's counsel. **See** Trial Court Opinion at 12.

Upon learning of the statement during trial, Appellant immediately requested that the trial court preclude this statement because the Commonwealth disclosed it untimely, but the trial court refused to preclude Officer Rosa's testimony about Appellant's inculpatory statement. **Id.** Even though the trial court offered Appellant the opportunity to litigate a Motion to Suppress given the untimely disclosure, Appellant "strategically declined" this offer and instead chose to cross-examine Officer Rosa extensively about his

untimely disclosure and omission within the report as part of his broader attempt to undermine Officer Rosa's credibility. *Id.*[5]

We conclude the trial court properly admitted Officer Rosa's testimony regarding Appellant's statement. Because Officer Rosa had omitted the statement from his official report of the assault, this evidence was equally inaccessible to both the Commonwealth and the defense.[6] As a result, Appellant cannot use the discovery rules against the Commonwealth for its failure to produce the evidence sooner. *See Dent*, *supra* at 585.

Moreover, the Commonwealth complied with its continuing duty to disclose by immediately notifying Appellant when Officer Rosa disclosed the existence of Appellant's inculpatory statement. *See* Pa.R.Crim.P. 573(D). Thus, the trial court properly rejected Appellant's request to preclude his own inculpatory statement to Officer Rosa.

Because we discern no violation of Rule 573 by the Commonwealth, the trial court did not err or abuse its discretion by refusing to preclude Appellant's inculpatory statement at trial. Appellant's arguments to the contrary are unavailing and he is not entitled to relief.

---

[5] Officer Rosa testified that he did not believe the substance of Appellant's threat was important at the time detectives interviewed him because threats by inmates were commonplace in prison. N.T., 6/24/15, at 62, 84-86.

[6] Arguably, the Commonwealth was at the bigger disadvantage since Appellant made the statements and thus logically knew the statement existed, while the prosecutor had no way of knowing about Officer Rosa's omission prior to trial.

**Transcripts of Recorded Prison Calls**

In Appellant's next issue, he avers that the trial court erred in permitting the jury to take a transcript of his recorded prison telephone conversations to the jury room during deliberations. Appellant's Brief at 62-65.[7] Appellant conceded at trial that these recordings did not amount to his own confession, which the jury would not be permitted to have during deliberations pursuant to Pa.R.Crim.P. 646(C)(2). *See* N.T., 6/25/15, at 79. Here, he argues that these "conversations were marginally relevant . . . [and the trial court] abused her discretion in allowing these transcripts . . . to go back to the jury[.]" Appellant's Brief at 65.

Ordinarily, "[w]hether an exhibit should be allowed to go out with the jury during its deliberation is within the sound discretion of the trial judge." *Commonwealth v. Barnett*, 50 A.3d 176, 194 (Pa. Super. 2012); Pa.R.Crim.P. 646(A); *see also Commonwealth v. Bango*, 685 A.2d 564 (Pa. Super. 1996).

_____

[7] Appellant's question presented also suggests that the trial court erred in admitting this evidence at all, however, Appellant does not advance any argument or cite relevant authority to support this claim. *See* Pa.R.A.P. 2119. Appellant only argues that the trial court erred in allowing the jury to have these transcripts during deliberations. Thus, Appellant has waived this aspect of his claim. *See Commonwealth v. McMullen*, 745 A.2d 683 (Pa. Super. 2000) (finding issues waived where Appellant failed to develop any argument for the claims and noting that meaningful appellate review is impossible in such a situation).

This discretion, however, is not absolute. Pennsylvania Rule of Criminal Procedure 646 expressly forbids juries from having certain enumerated categories of exhibits during deliberations, including written defendant confessions. *See* Pa.R.Crim.P. 646(C). "The underlying reason for excluding certain items from the jury's deliberations is to prevent placing undue emphasis or credibility on the material, and de-emphasizing or discrediting other items not in the room with the jury." *Commonwealth v. Strong*, 836 A.2d 884, 888 (Pa. 2003). "If there is a likelihood [that] the importance of the evidence will be skewed, prejudice may be found; if not, there is no prejudice *per se* and the error is harmless." *Id.*

Where a recording has been admitted as evidence at trial, but the transcripts of that recording have not, this Court has previously held that trial courts may permit the jury to use the transcripts during deliberations "as an aid in its assessment of the [recordings]." *Bango*, *supra* at 566. We reasoned that "where materials inform a jury and aid it in the difficult task of determining facts, the jury should be permitted to study those materials during its deliberations." *Id.*

Appellant has failed to establish that the trial court abused its discretion in permitting the jury to have these transcripts during deliberations. The transcripts were not forbidden under Pa.R.Crim.P. 646(C), so our Rules of Evidence permitted the trial court to exercise its sound discretion in determining whether to permit the jury to have these transcripts during

deliberations. The trial court sent these transcripts to the jury in response to their request during deliberations. This occurred after the trial court had admitted the recordings at trial, and after the jury had reviewed the transcripts without objection while the Commonwealth played the recordings for the jury. Pursuant to **Bango**, **supra**, the trial court did not abuse its discretion in allowing the jury to review the transcripts during deliberations. Appellant is entitled to no relief.

### Victim's Similar Attack Under Pa.R.E. 404(b)

In his next issue, Appellant contends that the trial court improperly precluded him from introducing hearsay evidence pursuant to Pa.R.E. 404(b) that the victim "had attacked another inmate in a similar fashion at a prison phone bank, and had pending criminal charges on that assault." Appellant's Brief at 66. Appellant argues that this similar assault showed the victim's "propensity to violence" and a "common plan, scheme or design" pursuant to only Pa.R.E. 404(b)(1). **Id.** at 66, 68-69.

Pennsylvania Rule of Evidence 404 sets out the general rules and exceptions pertaining to relevant evidence of crimes or other acts. Generally, evidence of a victim's violent propensities is inadmissible pursuant to Pa.R.E. 404(a)(1) and (b)(1).

When considering the admissibility of evidence under the common plan exception provided in Rule 404(b), "the trial court must first examine the details and surrounding circumstances of each criminal incident to assure that

the evidence reveals criminal conduct which is distinctive and so nearly identical as to become the signature of the same perpetrator." **Tyson**, **supra** at 358-59 (citation omitted). Further, "the trial court must assure that the probative value of the evidence is not outweighed by its potential prejudicial impact upon the trier of fact." **Id.** at 359. **See generally** Daniel J. Anders, Ohlbaum on the Pennsylvania Rules of Evidence § 404.06 *et seq.* (2017 ed. LexisNexis Matthew Bender).

Given Appellant's legal strategy, the only issue before this Court is whether the trial court erred in refusing to admit this evidence of the victim's alleged prior attack of an inmate pursuant to Pa.R.E. 404(b).[8] Appellant emphasizes that the trial court should have admitted this evidence because it demonstrated the victim's "propensity toward violence, and . . . a common

---

[8] Where a criminal defendant faces charges of a violent crime he may offer evidence of the victim's violent propensities to prove his own innocence pursuant to Pa.R.E. 404(a)(2). If such evidence is admitted the Commonwealth may offer evidence not only in rebuttal, but the Commonwealth may "offer evidence of the defendant's same trait[,]" *i.e.*, evidence of the defendant's own violent propensities. Pa.R.E. 404(a)(2)(B). "Thus, the jury will receive a balanced picture of the two participants to help it decide who was the first aggressor." Pa.R.E. 404, Comment.

Here, Appellant did not attempt to comply with Pa.R.E. 404(a)(2), the specific and applicable evidentiary rule regarding evidence of a victim's pertinent character trait as a violent person. The Commonwealth avers this was a transparent legal strategy: had Appellant followed the appropriate rules to admit the victim's violent attack in order to prove the victim's violent propensities and Appellant's own innocence, the Commonwealth would have likely sought to admit Appellant's own violent prior Third-Degree Murder conviction as rebuttal evidence.

plan, scheme[,] and design type of effect showing that [the victim] was an aggressor in these types of situations." Appellant's Brief at 66.

Appellant failed to meet the common plan, scheme, or design exception because the instant crime and the victim's other assault in prison near the phone bank are not so "distinctive and so nearly identical as to become the signature of the same perpetrator." *Tyson*, *supra* at 359. While they were both purportedly assaults in prison near the phone bank, the factual overlap between the two incidents does not go beyond the commission of crimes or conduct of the same general class.

Moreover, the trial court did not abuse its discretion in precluding this "unfairly prejudicial and potentially misleading hearsay evidence that clearly outweighed the probative value in violation of the rules of evidence." Trial Court Opinion, 6/10/16, at 12. Given the legal maneuvering by Appellant to admit this evidence while precluding the evidence of his own violent Murder conviction, the trial court acted properly in refusing to mislead the jury and in determining that the probative value of the victim's purported prior attack did not outweigh its potential for unfair prejudice.[9]

---

[9] Essentially, Appellant attempted to rely on a more general evidentiary rule when a very specific evidentiary rule controlled. Insofar as Appellant sought to avoid the application of Rule 404(a), the trial court properly rejected Appellant's attempt to circumvent the proper application of the Pennsylvania Rules of Evidence.

## After-Discovered Evidence

In his final claim, Appellant argues that he is entitled to a remand to the trial court for consideration of an after-discovered evidence claim regarding two new alleged eyewitnesses to the instant assault case, who wrote letters to Appellant's attorney after the trial detailing their proffered observations and testimony.

"A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery." Pa.R.Crim.P. 720(C). The Comment to Rule 720 explains that "after-discovered evidence discovered during the direct appeal process must be raised promptly during the direct appeal process, and should include a request for a remand to the trial judge[.]" Pa.R.Crim.P. 720, Comment.

"To warrant relief, after-discovered evidence must meet a four-prong test: (1) the evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely." *Commonwealth v. Rivera*, 939 A.2d 355, 359 (Pa. Super. 2007) (citation omitted).

Appellant avers that while his claim was pending on appeal in this Court, Larry Williams sent Appellant's attorney a letter on August 12, 2016, over a year after Appellant was sentenced, claiming that the victim "told him a few

hours before the incident that he was going to stab [Appellant] because he didn't like what he did at the phones. [Williams] then observed the incident and saw [the victim] was the aggressor and [Appellant] was defending himself." Appellant's Brief at 70.

Appellant also avers that Tony Mason also sent Appellant's attorney a letter on August 20, 2016, indicating that he observed the assault, saw the victim attack Appellant, and would have provided favorable testimony to Appellant at trial. *Id.* Appellant filed an Application for Remand on September 13, 2016, which this Court denied without prejudice to Appellant's raising the issue in his brief to this Court on appeal. Appellant has now done so and has reiterated his request for an evidentiary hearing. In its Brief, the Commonwealth does not oppose remand "for the sole and limited purpose of affording defendant the opportunity" to present his after-discovered evidence claim to the trial court. Commonwealth's Brief at 42. We agree.

Based upon the information in the briefs and the certified record, we are constrained to remand to provide the trial court the opportunity to develop the record and to rule upon Appellant's after-discovered evidence claim in the first instance. *See Rivera*, *supra* at 358-59.

Judgment of Sentence affirmed. Application for Remand granted. Case remanded for further proceedings consistent with this Opinion. Jurisdiction relinquished.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/17/2017</u>