J-A02022-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
ALEXANDER RODRIGUEZ-CRUZ :
:
Appellant : No. 1845 MDA 2017

Appeal from the Judgment of Sentence Entered August 7, 2017
In the Court of Common Pleas of Lancaster County Criminal Division at
No(s): CP-36-CR-0001055-2016

BEFORE: LAZARUS, J., DUBOW, J., and NICHOLS, J.

MEMORANDUM BY DUBOW, J.: **FILED JUNE 06, 2019**

Appellant, Alexander Rodriguez-Cruz, appeals from the August 7, 2017 Judgment of Sentence entered in the Lancaster County Court of Common Pleas following his jury conviction of Aggravated Assault and Conspiracy to Commit Aggravated Assault.[1] Appellant challenges the sufficiency and weight of the evidence in support of his Aggravated Assault conviction and the discretionary aspects of his sentence. After careful review, we affirm.

The Commonwealth charged Appellant with the above crimes following a violent altercation in the early morning hours of December 25, 2015, in which Appellant and his co-defendants, Francisco Camacho ("Camacho"), Joshua Ellis ("Ellis"), Anthony Maglietta ("Maglietta"), and Raymond J. Lee, III

_____

[1] 18 Pa.C.S. §§ 2702(a)(1) and 903, respectively.

("Lee"), violently assaulted the victim, Shaliek Rivera (the "victim"), and left him seriously injured.[2]

The relevant facts, as gleaned from the record, including the Notes of the Testimony, are as follows. Maglietta owned Molly's Pub and Carry-Out, a bar and bottle shop located on the corner of Shippen and Chestnut Streets in Lancaster. Ellis, Lee, and Appellant worked for Maglietta as security guards at Molly's Pub. Just before 1:00 AM on December 25, 2015, Appellant, Ellis, Maglietta, and Lee, were outside of Molly's Pub, when the victim approached the group. The victim greeted Ellis, and Lee approached them.[3] Lee and the victim engaged in a short conversation during which Lee became "animated" and proceeded to strike the victim violently on the head, while Appellant, Maglietta, and Ellis stood behind Lee, watching the assault. The strike immediately rendered the victim unconscious and prone. The victim remained unconscious and convulsing, lying partially in Shippen Street, for approximately 10 minutes. Eventually, the victim regained consciousness, stood up, and began to wander around, stumbling. The victim stumbled to a

---

[2] The jury also convicted Ellis, Maglietta, and Lee of the same offenses. They have filed direct appeals of their Judgments of Sentence which are pending at Docket Numbers 1854 MDA 2017; 1869 MDA 2017; and 78 MDA 2018, respectively. On May 12, 2017, Camacho entered an open guilty plea to one count of Robbery, 18 Pa.C.S. § 3701(a)(1)(v), at Docket No. CP-36-CR-806-2016, for which the trial court sentenced him on August 10, 2017, to a term of one to five years' incarceration. Camacho did not file a direct appeal from his Judgment of Sentence.

[3] Trial testimony indicated that Ellis and the victim were friends and had been roommates.

residence next door to Molly's Pub, which belonged to Maglietta, in an attempt to get help. Appellant, Lee, Maglietta, and Ellis proceeded to run after the victim.

Lee then grabbed the victim and threw him back to the ground, whereupon he punched and kicked the victim. The victim remained on the ground for an extended period of time, during which someone picked the victim's pockets.

The victim roused himself again and then attempted to enter a nearby vehicle. Lee, in the presence of Appellant, Ellis, and Maglietta, again thwarted the victim's efforts to obtain help and sanctuary, by removing the victim from the vehicle. The men placed the victim over a brick planter next to the Carry-Out and all proceeded to beat, kick, and punch the victim into unconsciousness. When the men finished beating the victim, Lee carried him to an area not far from Molly's Pub and left him there. The victim eventually stumbled back to Molly's Pub and fell down across the street from Molly's Pub. The victim laid there for approximately 20 minutes before Appellant, Ellis, Maglietta, and Lee carried him to a secluded area behind Maglietta's truck. The victim laid there, again unconscious, for approximately another 30 minutes before he regained consciousness, and wandered, disoriented, back across the street. Appellant, Ellis, Maglietta, and Lee refrained from assaulting the victim any further, but they did not provide him with any assistance.

The victim then proceeded to wander to a house on Chestnut Street whereupon the residents inside alerted the police. At first, the police took the

victim into custody on suspicion of public drunkenness but then, upon realizing that the victim was seriously injured, called EMS to transport the victim to the hospital as a trauma patient.

The victim sustained serious injuries from the assaults including bleeding, swelling, and bruising of his brain, and a fractured nose. He remained unconscious in the hospital for approximately one week following the attack. The victim also had bone fragments in his ear, which affected his equilibrium and prevented him from moving on his own for two or three months. At the time of trial, he continued to suffer from short-term memory loss and had no recollection of the attack.

Lancaster Police obtained videotaped footage of the incident from Molly's Pub's security cameras and from the Lancaster Community Safety Coalition, a group that has installed security cameras around Lancaster City.[4,5]

The Commonwealth charged the men as co-conspirators. On March 17, 2016, the Commonwealth filed a Notice of Intent to Consolidate. On June 13, 2016, Appellant filed a Pretrial Motion to Sever, which the court denied.

_____

[4] One security camera belonging to the Lancaster Community Safety Coalition is located at the intersection of Chestnut and Shippen Street, across from Molly's Pub.

[5] The Commonwealth also charged Maglietta with one count of Tampering with Evidence, 18 Pa.C.S. § 4910(1), in connection with Maglietta's attempt to tamper with and/or conceal the images of the incident recorded by the cameras at Molly's Pub. The jury convicted Maglietta of that charge, but the trial court subsequently granted Maglietta's Motion for Judgment of Acquittal as to that conviction.

A three-day joint jury trial commenced on May 22, 2017. The Commonwealth presented the testimony of Police Officer Herbert Watson, Detective Sergeant John Duby, Sergeant Michael John Gerace, and Sergeant Ronald William Breault, III, all from the Lancaster City Police Department. The victim also testified. In addition, the court admitted the videotaped footage of the incident into evidence. Maglietta testified on his own behalf and presented the testimony of one character witness. Lee presented the testimony of a witness to the crime—his son, Jobe Lee. Neither Appellant nor Ellis presented any evidence or testimony.

On May 25, 2017, the jury convicted Appellant of Aggravated Assault and Conspiracy. The trial court ordered a Pre-Sentence Investigation ("PSI") Report. On August 7, 2017, after consideration of the PSI Report and argument of counsel, the trial court sentenced Appellant to an aggregate term of four and one-half to ten years' incarceration, and ordered Appellant to pay $7,786.37 in restitution.[6]

Appellant filed a timely Post-Sentence Motion in which he challenged the sufficiency and weight of the evidence, the court's denial of his Motion to Sever, and the discretionary aspects of his sentence. On October 30, 2017, the trial court denied Appellant's Post-Sentence Motion.

---

[6] Appellant's sentence was comprised of one term of four and one-half to ten years' incarceration for his Aggravated Assault conviction and a concurrent term of three to six years' incarceration for his Conspiracy conviction.

This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

Appellant raises the following issues on appeal:

1. Did the [s]entencing [c]ourt manifestly abuse its discretion in sentencing [Appellant] to four and one-half to ten years['] incarceration when it misapplied the sentencing guidelines, failing to adequately consider such mitigating factors as his limited involvement in the criminal acts for which he was convicted, his lack of a prior criminal record, his educational and work history[,] as well as his remorse for his actions such that the sentence handed down was clearly unreasonable?

2. Did the [t]rial [c]ourt err in denying Appellant's Post[-] Sentence Motion on the basis that the [C]ommonwealth failed to introduce sufficient evidence that Appellant intended to cause serious bodily injury, or that he acted recklessly or in concert with others to do so in order to convict him of the crime of [A]ggravated [A]ssault when the verdict in this matter was against the weight of the evidence as the evidence clearly demonstrated that [] Appellant threw [only] the last punch, to the victim in this matter?

Appellant's Brief at 7-8

In his first issue, Appellant claims that the trial court abused its discretion by imposing a top-end standard range sentence for his Aggravated Assault conviction without adequately considering mitigating factors. *Id.* at 20-21. This claim implicates the discretionary aspects of Appellant's sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to an appeal as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). Prior to reaching the merits of a discretionary sentencing issue, we must determine whether: (1) appellant has filed a timely notice of appeal; (2) the issue was properly preserved at sentencing or in a

motion to reconsider and modify sentence; (3) appellant's brief has a fatal defect; and (4) there is a substantial question that the sentence is not appropriate under the Sentencing Code. *Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006).

Here, Appellant filed a timely Notice of Appeal, preserved his claim in a Post-Sentence Motion, included a separate Pa.R.A.P. 2119(f) Statement in his Brief to this Court. We, thus, consider whether the issue Appellant preserved raises a substantial question.

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Anderson*, 830 A.2d 1013, 1018 (Pa. Super. 2003) (citation omitted). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, *supra* at 912-13 (citation and quotation omitted).

Appellant avers that the trial court erred in failing to consider that "Appellant was a contributing member of society with a positive work history and an active involvement in civic affairs, including his church, as well as a family man who had never committed a single crime in his twenty-seven years." Appellant's Brief at 21.

Claims that the sentencing court did not adequately consider mitigating factors generally do not raise a substantial question. *See Commonwealth*

***v. Disalvo***, 70 A.3d 900, 903 (Pa. Super. 2013) ("This Court has held on numerous occasions that a claim of inadequate consideration of mitigating factors does not raise a substantial question for our review."); ***Commonwealth v. Zirkle***, 107 A.3d 127, 133 (Pa. Super. 2014) ("[W]e have held that a claim that a court did not weigh the factors as an appellant wishes does not raise a substantial question.").

Based on our review of the above precedential case law, the nature of the crimes at issue, and the length of imprisonment, we conclude that Appellant has failed to present a substantial question in challenging the discretionary aspects of his sentence. We, thus, decline to review the merits of the issue raised.[7]

---

[7] Had Appellant raised a substantial question, we would conclude that the court did not abuse its discretion in imposing a standard guideline range sentence. A review of the sentencing hearing transcript reveals that the trial court stated on the record the reasons for Appellant's sentence, and described in detail that it considered the sentencing guidelines; the PSI report; Appellant's age, lack of criminal record, commitment to his family and church, upbringing, and work history; the nature and seriousness of the offenses and injuries to the victim; Appellant's rehabilitative needs; and the need to protect the community. N.T., 8/7/17, at 14-19. "Our Supreme Court has determined that where the trial court is informed by a [PSI R]eport, it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that, where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Downing***, 990 A.2d 788, 794 (Pa. Super. 2010) (citation omitted).

In his second issue, Appellant challenges the sufficiency and weight of the evidence in support of his Aggravated Assault and Conspiracy convictions.[8]

"A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." *Commonwealth v. Miller*, 172 A.3d 632, 640 (Pa. Super. 2017) (internal quotation marks and citations omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." *Id.* "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." *Id.*

Under Pennsylvania law, "a person is guilty of aggravated assault if he . . . attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly[,] or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S. § 2702(a)(1). Intent to cause serious bodily injury can be proven by wholly circumstantial

_____

[8] We note with displeasure that the argument section of Appellant's Brief combines his sufficiency and weight of the evidence challenges into a single claim. *See* Appellant's Brief at 22-26, 27. For the sake of clarity, we regard and discuss these challenges as separate claims.

evidence, and may be inferred from acts or conduct, or from attendant circumstances. *Commonwealth v. Holley*, 945 A.2d 241, 247 (Pa. Super. 2008). As applied to the offense of Aggravated Assault, "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301.

"A person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a).[9] "As intent is a subjective frame of mind, it is of necessity difficult of direct proof. Intent can be proven by direct or circumstantial evidence; it may be inferred from acts or conduct or from the attendant circumstances." *Commonwealth v. Miller*, 172 A.3d 632, 641 (Pa. Super. 2017) (citations and quotation marks omitted).

"A person is guilty of conspiracy with another person or persons to commit a crime if[,] with the intent of promoting or facilitating its commission he: (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 Pa.C.S. § 903.

---

[9] "A person acts intentionally with respect to a material element of an offense when . . . it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S. § 302(b)(1)(i).

In order to convict a defendant of Criminal Conspiracy, the Commonwealth must prove that the defendant "1) entered into an agreement to commit or aid in an unlawful act with another person or persons; 2) with a shared criminal intent; and 3) an overt act was done in furtherance of the conspiracy." *Commonwealth v. Feliciano*, 67 A.3d 19, 25-26 (Pa. Super. 2013 (citation omitted). The conspiratorial agreement "can be inferred from a variety of circumstances including, but not limited to, the relation between the parties, knowledge of and participation in the crime, and the circumstances and conduct of the parties surrounding the criminal episode." *Commonwealth v. Devine*, 26 A.3d 1139, 1147 (Pa. Super. 2011).

Importantly, once the Commonwealth establishes the existence of a conspiratorial agreement, a defendant "is still criminally liable for the actions of his co-conspirator taken in furtherance of the conspiracy" even if he is not a principal in the act. *Commonwealth v. Johnson*, 719 A.2d 778, 785 (Pa. Super. 1998).

With respect to his Aggravated Assault conviction, Appellant first claims that the Commonwealth's evidence established only that "the victim was assaulted three separate times, [but that] Appellant's involvement was limited to the third assault" wherein Appellant struck the victim only once in the head or face area. Appellant's Brief at 25. He argues that the Commonwealth failed to prove that he acted with the requisite intent to commit an aggravated assault or knowledge that an aggravated assault would occur. *Id.* Appellant

concludes, therefore, that his "actions amounted to nothing more than a simple assault." *Id.*

With respect to his Conspiracy conviction, Appellant alleges that the Commonwealth failed to prove that he was acting in concert with his co-defendants to assault the victim. *Id.* at 25-26. He avers that his "mere presence" at the scene of the crime is not sufficient to sustain his Conspiracy conviction. *Id.* at 26. Last, Appellant claims that there was no evidence that he was friends with or had gang affiliations with his co-defendants. *Id.*

The trial court summarized the Commonwealth's evidence in support of Appellant's convictions as follows:

> The Commonwealth presented evidence that [Appellant] was present and actively involved in the assaults upon the Victim, including delivering his own punch to the Victim's head after it was apparent that the Victim was severely injured. Specifically, Sergeant Michael John Gerace, a patrol sergeant with the Lancaster City Bureau of Police, where he has been employed with said department for 17 years, testified that he reviewed surveillance video footage from the Lancaster Community Safety Coalition of the assault in this matter. Sergeant Gerace was also able to obtain footage from a surveillance camera at Molly's Pub. Sergeant Gerace was able to see that there was an assault taking place from his review of the video footage. He saw Mr. Lee punch[] the victim on the left side of his face, push the Victim on the ground, and punch and kick the Victim in the face. Sergeant Gerace observed that [Appellant] was standing directly in front of [c]o-[d]efendant, Mr. Maglietta's house, which is right next door to Molly's Pub, on Shippen Street[,] with another [c]o-[d]efendant, Mr. Camacho, at the time of the assault by Mr. Lee. Sergeant Gerace's observation was that [Appellant] and Mr. Camacho were "either participating in or at a very minimum present during the assault." After the initial assault, the Victim stumbles around and ends up in front of Mr. Maglietta's home, where he is then approached by Mr. Camacho and [Appellant]. Sergeant Gerace explains that the video footage shows Mr. Lee

scoop up the Victim, while being followed by Mr. Ellis and [Appellant]. Sergeant Gerace describes the Victim as "a virtually unconscious body." He then views Mr. Lee, Mr. Ellis[,] and [Appellant] take the Victim to an unknown location and return to Molly's Pub without the Victim. Sergeant Gerace explained that the video footage then depicts the Victim come back to the area between Molly's Pub and Mr. Maglietta's house. All of the perpetrators, including [Appellant], followed the Victim at this time. Sergeant Gerace observes the Victim, who was laying back on a planter on the side of Molly's Pub, being kicked by Mr. Maglietta and assaulted by all of the [c]o-[d]efendants, including [Appellant]. Sergeant Gerace confirmed that [Appellant] struck the victim one time about the head or face.

Trial Ct. Op., 3/5/18, at 12-13 (citations omitted).

Following this court's review of the Notes of Testimony and other evidence of record, we agree with the trial court that, when viewed in the light most favorable to the Commonwealth as verdict-winner, the Commonwealth presented sufficient evidence from which the jury could reasonably conclude that Appellant had committed the offenses of Aggravated Assault and Conspiracy. As the trial court aptly noted, the evidence specifically demonstrated that Appellant: (1) was present while the victim was viciously assaulted numerous times by Appellant's co-defendants, making no attempt to stop the assault; (2) followed the victim with the co-defendants and helped them carry the unconscious victim to a separate location across the street; (3) left the victim to lay unconscious for an extended period of time without seeking medical attention for the victim; (4) delivered the final punch to the victim's face, evidencing intentional, knowing, and reckless conduct *Id.* at 13-14. Thus, it was reasonable for the jury to find that "the totality of the actions of [Appellant] taken in concert with the actions of accomplices and co-

conspirators unfortunately and unquestionably" caused the victim serious bodily injury. *Id.* at 14. Appellant is, therefore, not entitled to relief on this claim.

Appellant also challenges the weight the jury gave to the Commonwealth's evidence that Appellant had received training as a boxer.[10] Appellant's Brief at 27. He claims that the emphasis the Commonwealth placed on this fact in its closing argument improperly led the jury "to make a connection between supposed boxing experience and [Appellant] delivering a heavy enough blow as to elevate [] what would otherwise be a simple assault to that of an aggravated assault under the law." *Id.*

When considering challenges to the weight of the evidence, we apply the following precepts. "The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none[,] or some of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Talbert*, 129 A.3d 536, 545 (Pa. Super. 2015) (quotation marks and citation omitted). Resolving contradictory testimony and questions of credibility are matters for the finder of fact. *Commonwealth v. Hopkins*, 747 A.2d 910, 917 (Pa.

---

[10] To the extent Appellant also complains that the trial court improperly permitted the Commonwealth to introduce this evidence, we find that Appellant has raised this issue for the first time on appeal. *See* Trial Ct. Op. at 11-12 (explaining that Appellant's counsel withdrew his objection to the Commonwealth's question to Sergeant Gerace pertaining to Appellant's background in boxing). Thus, Appellant has waived this issue. *See* Pa.R.A.P. 302.

Super. 2000). It is well-settled that we cannot substitute our judgment for that of the trier of fact. *Talbert*, *supra* at 546.

Moreover, appellate review of a weight claim is a review of the trial court's exercise of discretion in denying the weight challenge raised in the post-sentence motion; this court does not review the underlying question of whether the verdict is against the weight of the evidence. *See id.* at 545-46. "Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is [or is not] against the weight of the evidence." *Id.* at 546. "One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice." *Id.*

Furthermore, "[i]n order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court." *Id.* (internal quotation marks and citation omitted). As our Supreme Court has made clear, reversal is only appropriate "where the facts and inferences disclose a palpable abuse of discretion[.]" *Commonwealth v. Morales*, 91 A.3d 80, 91 (Pa. 2014) (citations and emphasis omitted).

"[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict but questions which evidence is to be

believed." ***Commonwealth v. Thompson***, 106 A.3d 742, 758 (Pa. Super. 2014) (citation omitted). For that reason, the trial court need not view the evidence in the light most favorable to the verdict winner, and may instead use its discretion in concluding whether the verdict was against the weight of the evidence. ***Commonwealth v. Widmer***, 744 A.2d 745, 751 n.3 (Pa. 2000).

With respect to this issue, the trial court found that "it is quite apparent that the jury resolved the relevant credibility issues in favor of the witnesses presented by the Commonwealth[.]" Trial Ct. Op. at 14. It further found that Appellant "has failed to demonstrate that the verdict in this matter served to shock one's sense of justice." ***Id.*** We agree.

Appellant essentially asks us to reassess the credibility of the Commonwealth's witnesses and to reweigh the testimony and evidence presented at trial. We cannot and will not do so. Our review of the record shows that the evidence is not tenuous, vague, or uncertain, and the verdict was not so contrary to the evidence as to shock the court's conscience. Accordingly, we discern no abuse of discretion in the trial court's denial of Appellant's weight claim.

Judgment of Sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/06/2019