J-A21023-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GIORGI JIGAURI | : | |
| | : | |
| Appellant | : | No. 119 EDA 2022 |

Appeal from the Judgment of Sentence Entered December 10, 2021
In the Court of Common Pleas of Philadelphia County
Criminal Division at CP-51-CR-0002433-2020

BEFORE:  LAZARUS, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY MURRAY, J.:                    **FILED OCTOBER 17, 2022**

Giorgi Jigauri (Appellant) appeals from the judgment of sentence imposed after the trial court convicted him of voluntary manslaughter and possessing an instrument of crime (PIC).[1]  Upon review, we affirm.

The trial court described the facts presented at trial as follows:

On March 14, 2020, at approximately 2:45 a.m., in the parking lot of the Philmont Shopping Center … where Golden Gates Restaurant ("Golden Gates") [is] located, [Appellant] killed the decedent [the decedent], Alexander Villaran, by stabbing him once in the back with an eight-inch flip blade pocketknife.  The knife punctured the decedent's lungs, which caused the decedent to collapse and die a short time afterward.

Prior to the incident, the decedent was with his girlfriend, Julia Karatsoupa ("Karatsoupa"), and their friends, Mikal Smaugh ("Smaugh"), Kayla Laboy ("Laboy"), and Khalil Popal ("Popal") at the Aladdin Hookah Lounge ("Aladdin")[.] … [Appellant] was also at Aladdin at that time with Katherine Skylar ("Skylar"), Anna

_____

[1] 18 Pa.C.S.A. §§ 2503(a)(1) and 907(a).

Kovalev ("Kovalev"), and Artur Shnauderman ("Shnauderman"). At about 2:00 a.m., everyone began to leave Aladdin and decided to go to Golden Gates' parking lot. Skylar drove Kovalev, Karatsoupa, and [Appellant], while the decedent drove Smaugh. Ryan Balceniuk ("Balceniuk"), a friend of Shnauderman, Skylar, Kovalev, and [Appellant], was not at Aladdin, but was dropped off at Golden Gates to meet up with Shnauderman.

Several months prior, [Appellant] had been in a sexual relationship with Karatsoupa, but they were no longer seeing each other at the time. When [Appellant] and Karatsoupa arrived at Golden Gates, they had an argument which ended with both [Appellant] and Karatsoupa exiting Skylar's vehicle[.] … Karatsoupa then approached the decedent and told him [Appellant] was being "smart" and disrespectful to her. …

The decedent then confronted [Appellant] and they began arguing. Their argument escalated to a [physical] fight after [Appellant] pushed the decedent. As [Appellant] and the decedent were fighting on[e] another, Smaugh became involved and began hitting [Appellant] as well. It was at this point that [Appellant's] friends noticed that [Appellant] was on the ground being hit by the decedent and Smaugh. Balceniuk, Shnauderman, and two other men ran over to get involved and the fight became a five on two.

After seeing [Appellant's] friends run over, Laboy and Karatsoupa also became involved in the fight. Karatsoupa attempted to put herself between the decedent and the others, but returned to the car after being hit and pushed. While the decedent was on the ground, Laboy laid on top of him to protect him, but [Appellant's] friends continued to hit them for a moment before they stopped, and she was able to get up with the decedent. Immediately thereafter, everyone was separated and began walking back toward their cars.

As [Appellant] and the decedent returned to their cars, [Appellant] and the decedent began arguing again. As they were arguing, they began to approach one another again. As the decedent approached [Appellant], the decedent had his hand under his shirt and said something along the lines of "you're about to get fucked up" or "you're about to get killed." [Appellant] then pulled a knife out of his pocket, rushed in on the decedent as the decedent

grabbed him, and thrust the knife from right to left toward the decedent stabbing him once.

Trial Court Opinion, 2/28/22, at 2-4 (record citations omitted).

On March 22, 2020, the Commonwealth charged Appellant with third-degree murder[2] and PIC. A non-jury trial took place on October 4 - 5, 2021, after which the trial court convicted Appellant of voluntary manslaughter and PIC. On December 10, 2021, following completion of a presentence investigation report, the trial court sentenced Appellant to an aggregate 3½ to 8 years in prison. Appellant filed a timely post-sentence motion challenging the weight of the evidence and the discretionary aspects of his sentence. Appellant's Post-Sentence Motion, 12/16/21, at 2-5. The trial court denied the motion on December 22, 2021. This timely appeal followed.[3]

Appellant presents two issues for our review:

1. Should Appellant's judgment of sentence be vacated because the Commonwealth did not present sufficient evidence to prove beyond a reasonable doubt that Appellant did not act in justifiable self-defense when, *inter alia*, decedent initiated and reinitiated the fight and Appellant stated he did not want a fight, decedent went back to a car and retrieved what looked like a concealed weapon, Appellant had nowhere to safely retreat from decedent's aggression, Appellant had a good reputation for relevant good character, and Appellant stabbed decedent once and did not engage in conduct that would foreseeably result in death and Appellant reasonably sought to protect himself from decedent and those acting in concert with decedent?

---

[2] 18 Pa.C.S.A. § 2502(c).

[3] Appellant and the trial court have complied with Pa.R.A.P. 1925.

2.      Did the trial court abuse its discretion by denying Appellant's post-sentence motion because Appellant's conviction is against the weight of the evidence as to all charges and a new trial should be ordered because, *inter alia*, someone other than Appellant initially rushed decedent, decedent initiated and reinitiated the fight and Appellant stated he did not want a fight, decedent went back to a car and retrieved what looked like a concealed weapon, Appellant had nowhere to safely retreat from decedent's aggression, and Appellant had a good reputation for relevant good character?

Appellant's Brief at 4 (reordered for disposition).

Appellant challenges the sufficiency of the evidence. When reviewing a sufficiency challenge, we determine "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." **Commonwealth v. May**, 887 A.2d 750, 753 (Pa. 2005) (citation omitted). "Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact— while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." **Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa. Super. 2017) (citation omitted). "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." **Id.**

Appellant maintains he was wrongly convicted of manslaughter because he acted in self-defense. He contends the Commonwealth "did not present sufficient evidence to prove beyond a reasonable doubt that Appellant did not act in justifiable self-defense[.]" Appellant's Brief at 7. Appellant asserts: (a)

the decedent "initiated and reinitiated the fight"; (b) Appellant did not want a fight; (c) the decedent went to his car and retrieved "what looked like a concealed weapon"; and (d) Appellant had no place to safely retreat. *Id.* He argues:

> Appellant did not act in a grossly negligent or reckless manner. Instead, Appellant acted reasonably given the repeated aggression and concealed weapon that decedent appeared to possess.

*Id.* at 17.[4]

The Pennsylvania Crimes Code provides:

> A person who kills an individual without lawful justification commits voluntary manslaughter if at the time of the killing he is acting under a sudden and intense passion resulting from serious provocation by:
>
> (1) the individual killed[.]

18 Pa.C.S.A. § 2503(a)(1).[5]

The Pennsylvania Supreme Court has explained:

> [A] claim of self-defense (or justification, to use the term employed in the Crimes Code) requires evidence establishing three elements: (a) [that the defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c)

---

[4] Appellant concedes police did not find a weapon on decedent, Appellant's Brief at 17, and no witnesses saw decedent with a weapon. *See* Trial Court Opinion, 2/28/22, at 7.

[5] Appellant cites the definition of <u>in</u>voluntary manslaughter. Appellant's Brief at 17. Appellant does not challenge the sufficiency of the evidence underlying his conviction for PIC. *See id.* at 15-17.

that the [defendant] did not violate any duty to retreat. Although the defendant has no burden to prove self-defense ... before the defense is properly in issue, there must be some evidence, from whatever source, to justify such a finding. Once the question is properly raised, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense. The Commonwealth sustains that burden of negation if it proves any of the following: [1] that the [defendant] was not free from fault in provoking or continuing the difficulty which resulted in the [injury]; [2] that the [defendant] did not reasonably believe that he was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save himself therefrom; or [3] that the [defendant] violated a duty to retreat or avoid the danger.

*Commonwealth v. Mouzon*, 53 A.3d 738, 740-41 (Pa. 2012) (citations omitted; some brackets in original); *see also* 18 Pa.C.S.A. § 505 (use of force in self-protection). "If the Commonwealth establishes any one of these three [negation] elements beyond a reasonable doubt, then the conviction is insulated from a defense challenge to the sufficiency of the evidence where self-protection is at issue." *Commonwealth v. Burns*, 765 A.2d 1144, 1149 (Pa. Super. 2000) (citation omitted).

Appellant's sufficiency argument is belied by the record. After reviewing the notes of testimony, we have determined that The Honorable Barbara A. McDermott, sitting as the trial court, has capably and accurately addressed Appellant's argument. *See* Trial Court Opinion, 2/28/22, at 7-9; *see also id.* at 7 ("[Appellant] did act out of an honest, *bona fide* belief that he was in imminent danger. However, [Appellant's] belief was not reasonable based on the facts surrounding the incident."). We therefore adopt the trial court's analysis in disposing of Appellant's sufficiency issue.

- 6 -

Appellant also claims the verdict was against the weight of the evidence. *See* Appellant's Brief at 9-15. He asserts:

> The trial court abused its discretion in denying Appellant's post-sentence motion as to the weight of the evidence. The evidence was contradictory and the convictions shock the conscience because Appellant, an individual with good relevant character, acted in self-defense. Therefore, a new trial should be ordered.

*Id.* at 9. Appellant further contends the trial court's ruling "is due significant (albeit not absolute) deference as the factfinder[.]" *Id.* at 15.

We do not review challenges to the weight of the evidence *de novo* on appeal. *See Commonwealth v. Rivera*, 983 A.2d 1211, 1225 (Pa. 2009). Rather, we review the trial court's exercise of its discretionary judgment regarding the weight of evidence presented at trial. *See id.* "[W]e may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice." *Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted). A verdict is said to be contrary to the evidence such that it shocks one's sense of justice when "the figure of Justice totters on her pedestal," or if "the jury's verdict, at the time of its rendition, causes the trial judge to lose his breath, temporarily, and causes him to almost fall from the bench, then it is truly shocking to the judicial conscience." *Commonwealth v. Davidson*, 860 A.2d 575, 581 (Pa. Super. 2004) (citations omitted).

In addressing Appellant's weight claim, the trial court explained:

> [The] verdict is not so contrary to the evidence as to shock one's sense of justice. [Appellant] admitted to stabbing the decedent

with a knife. [Appellant] answered verbal threats and fists with a knife. The stabbing occurred in an open parking lot with plenty of room for [Appellant] to safely retreat. Whether a verdict is against the weight of the evidence is within the discretion of [the trial c]ourt, and [the trial c]ourt found that the evidence was sufficient to sustain a conviction for voluntary manslaughter and PIC. [The trial c]ourt's conclusion [that Appellant's] belief that he was in danger of death or serious bodily injury was unreasonable and that [Appellant] could have retreated safely is not contrary to the evidence presented at trial. Therefore, [Appellant's] claim that his conviction is against the weight of the evidence fails.

Trial Court Opinion, 2/28/22, at 10.

The trial court's determination is not shocking and was thoroughly within the court's discretion and function as factfinder. Thus, Appellant's weight issue does not merit relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2022