J-S03021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| AARON CEDRIC WYATT | : | |
| | : | |
| Appellant | : | No. 753 WDA 2021 |

Appeal from the Judgment of Sentence Entered June 10, 2021
In the Court of Common Pleas of Fayette County
Criminal Division at No(s): CP-26-CR-0002751-2019

BEFORE:   LAZARUS, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY SULLIVAN, J.:                **FILED: MARCH 18, 2022**

Aaron Cedric Wyatt appeals from the judgment of sentence imposed following his conviction for aggravated harassment by prisoner and summary disorderly conduct.[1]  We affirm.

The trial court provided the following factual and procedural history:

> Scott Emminger works as a corrections officer in solitary confinement at SCI Fayette.  [In] August [ ] 2019 . . . Cell 2023 on JB block was occupied by [Wyatt] and another inmate named McClelland.  The names and photographs of the inmate occupants are posted outside of each cell door.  Officer Emminger and his partner, Officer Tyner, looked into the cell prior to passing the meal tray[s in,] and noted inmate McClelland was standing at the back of the cell and [Wyatt] was at the cell door waiting to receive [the] trays.  Officer Tyner opened the meal slot while Officer Emminger handed the trays to [Wyatt].  After the second tray was

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2703.1, 5503(a)(4).

passed through the door, [Wyatt] "stuck his hand out with a white Styrofoam cup which had a yellow substance in it with some brown stuff. He stuck his hand out and he flew it up in [the officers'] faces." The yellow substance covered the officers' eyes and uniforms and went in their mouths. Officer Emminger described the yellow substance as warm and smelling and tasting like urine. Officer Tyner . . . confirm[ed] that [Wyatt] was the inmate who threw the cup of yellow substance which [both officers] identified . . . as urine.

Following a trial by jury . . . Wyatt[] was found guilty of aggravated harassment by prisoner . . . [Wyatt] was sentenced to a term of incarceration of twenty-seven months to six years.

Trial Court Opinion, 8/10/21, at 1-2 (citations to the record and unnecessary capitalization omitted, paragraphs re-ordered). Wyatt timely appealed his judgment of sentence, and both he and the trial court complied with Pa.R.A.P. 1925.[2]

Wyatt raises the following issue for our review: "Did the Commonwealth fail to present sufficient evidence to prove beyond a reasonable doubt that [he] 'intentionally' threw a cup of urine on corrections officers?" Wyatt's Brief at 7 (unnecessary capitalization omitted).

It is well-settled that "in reviewing the sufficiency of the evidence, [this] . . . [C]ourt is required to review all the evidence and all reasonable inferences

_____

[2] We observe that although the trial court's Rule 1925(b) concise statement order was issued on July 6, 2021, the docket does not indicate service of that order on Wyatt until July 7, 2021. Wyatt's Rule 1925(b) concise statement, filed on July 28, 2021, is thus timely. *See* Pa.R.Crim.P. 114(C)(2)(c) (requiring that the docket contain the date of service of the order or court notice); *see also Commonwealth v. Chester*, 163 A.3d 470, 472 (Pa. Super. 2017) (noting that the date of entry of the 1925(b) order shall be the day the clerk of the court mails or delivers copies of the order to the parties).

drawn therefrom in the light most favorable to the Commonwealth as verdict winner." ***Commonwealth v. Boyd***, 763 A.2d 421, 423 (Pa. Super. 2000) (internal citation, ellipses, and brackets omitted). The question is whether the evidence, thus viewed, is sufficient to prove a defendant's guilt beyond a reasonable doubt. ***Id***. Further, the Commonwealth "need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." ***Commonwealth v. Hecker***, 153 A.3d 1005, 1008 (Pa. Super. 2016) (internal citation omitted). A jury "may believe all or only a part of a witness's testimony, and so long as the verdict is supported by the evidence[,] there is no basis for interference with the fact-finding function of the jury." ***Boyd***, 763 A.2d at 423 (internal citation and quotations omitted). A conviction may rest on wholly circumstantial evidence, and this Court "may not [re]weigh the evidence and substitute its judgment for the fact-finder." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017) (internal citation omitted).

The Crimes Code defines aggravated harassment by prisoner as follows:

> A person who is confined in . . . any State penal or correctional institution . . . commits a felony of the third degree if he, while so confined . . . intentionally or knowingly causes or attempts to cause another to come into contact with . . . urine or feces by throwing, tossing, spitting or expelling such fluid or material.

18 Pa.C.S.A. § 2703.1. This Court has previously held that "it is unnecessary for the Commonwealth to conduct a chemical analysis of the fluid or material to determine whether it is one of the fluids/materials listed in Section 2703.1. Rather, the Commonwealth may rely on circumstantial evidence to prove the identity of the fluid." *Boyd*, 763 A.2d at 424.

The Crimes Code provides that a person acts intentionally with respect to a material element of an offense under the following circumstances:

   (i)  if the element involves the nature of his conduct or a result thereof, it is his conscious object to engage in conduct of that nature or to cause such a result; and

   (ii) if the element involves the attendant circumstances, he is aware of the existence of such circumstances or he believes or hopes that they exist.

18 Pa.C.S.A. § 302(b)(1).

Wyatt argues that the Commonwealth failed to prove that the substance he threw at Officers Emminger and Tyner was urine because there was no evidence at trial that the substance had been chemically tested. Wyatt points out that neither officer requested that the substance be tested. He additionally observes that Officer Emminger had described the substance as "unknown" in his report and did not claim it was urine until trial. Wyatt's Brief at 12. Wyatt further maintains that the Commonwealth failed to prove intent because neither officer testified that he threatened to throw urine at them, or that his actions were not accidental.

The trial court considered Wyatt's issue and determined that it lacked merit. The court reasoned:

> The Commonwealth presented evidence believed by the jury, sufficient in kind and quality, that [Wyatt] threw a cup of urine on two corrections officers . . . By his putting a cup of urine through the meal tray [slot] and throwing it at two corrections officers, the Commonwealth established [Wyatt's] intent, specifically that his "conscious object" of throwing urine at officers would cause the result of urine hitting the officers' bodies and that [Wyatt] was "aware of the existence of such circumstances[,]" being that his throwing a cup of urine at two officers would cause the intended result of hitting the officers with urine.

Trial Court Opinion, 8/10/21, at 3-4 (applying 18 Pa.C.S.A. § 302(b)(1)).

Viewing the evidence of record in the light most favorable to the Commonwealth, including all reasonable inferences therefrom, we conclude the evidence was sufficient for the jury to find, beyond a reasonable doubt, that Wyatt threw urine at the officers and that he intended to do so. As explained above, the Commonwealth was not required to chemically test the substance Wyatt threw at the officers to establish it was urine. *See Boyd*, 763 A.2d at 424. As the *Boyd* court noted, it would be unreasonable to require testing in all situations because "it may be impossible for the fluid or material to be preserved so that it can be analyzed." *Id*.

Moreover, the officers' testimony sufficiently established that the substance was urine. Officer Emminger described the substance as "yellow" and "warm," and testified that it smelled and tasted like urine. N.T., 5/5/21,

- 5 -

at 29.[3]   Officer Tyner similarly described the substance as warm and yellow and indicated it tasted like urine.  *Id*. at 42-43 (explaining the urine went into his eyes, ears, nose, mouth, and onto his right shoulder and chest).   This testimony was sufficient to establish the substance was urine.  *See Boyd*, 763 A.2d at 424; *see also Hecker*, 153 A.3d at 1009 (concluding video and testimonial evidence established a violation of section 2703.1).

The officers' testimony was also sufficient for the jury to find that Wyatt acted intentionally.  Officer Emminger testified Wyatt "stuck his hand out with a white Styrofoam cup which had a yellow substance in it . . . and he flew it up in our faces."  N.T., 5/5/21, at 27.  Officer Tyner likewise described Wyatt as having "reached through the . . . opening and doused or splashed myself and my partner . . . [with] the foreign substance which smelled of urine, had the warmth of urine, [and] tasted like it . . . ."  *Id*. at 42.  Further, both officers observed Wyatt approach them with a second cup before Officer Tyner pepper-sprayed him.  *Id*. at 28, 43.  This testimony, viewed in the light most favorable to the Commonwealth, established it was Wyatt's conscious objective to throw urine at the officers.  *See* 18 Pa.C.S.A. § 302(b)(1).  Accordingly, Wyatt's argument merits no relief.

Judgment of sentence affirmed.

---

[3] Officer Emminger additionally testified he is familiar with the taste of urine because he has a toddler who has urinated on him.  N.T., 5/5/21, at 37.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/18/2022