J-A06033-23

**ON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                               :              PENNSYLVANIA
                               :
             v.                :
                               :
                               :
                               :
ZAKEETA THOMPSON              :
                               :
          Appellant            :   No. 470 WDA 2022

Appeal from the Judgment of Sentence Entered November 16, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0002589-2021

BEFORE:  OLSON, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED:  March 16, 2023**

This case is about "Tito," a missing chihuahua.  Following a bench trial, Zakeeta Thompson (Thompson) was found guilty by the Court of Common Pleas of Allegheny County (trial court) of one count of theft by unlawful taking because she had "lost" the canine right after rescuing him from deplorable living conditions in her sister's home.  Thompson argues on appeal that the conviction cannot stand because the evidence of her criminal intent was legally insufficient, and the Commonwealth now concedes error on that point.  As we, too, find merit in the claim, the judgment of sentence must be vacated.

The underlying facts of this case are undisputed.  On the day in question, Thompson went to the apartment of her sister, Sequoia Burkes.  Thompson

---

[*] Retired Senior Judge assigned to the Superior Court.

had been caring for Burkes' two young children for over a week while Burkes was being hospitalized to treat an undisclosed mental illness.

Burkes was not at home when Thompson arrived there to deliver the two children. The apartment was locked, but Thompson attempted to enter out of concern for Burkes' safety. Thompson called the security service for the apartment complex, requesting a wellness check, and three security guards responded, including Dale Miller, who would later testify at Thompson's trial.

Once the security guards arrived, Thompson crawled into the home through a window and unlocked the front door so that the guards could enter. They saw that Burkes was not home, but noticed that the dog, Tito, was alone there. Thompson and the security guards were alarmed because no food or water had been left for the dog. Even more concerning was the fact that items of garbage and cleaning chemicals had spilled onto the floor in areas where the dog could come into contact with them. The security guards described the apartment as uninhabitable. **See** Trial Transcript, 11/16/2021, at p. 13.

In the presence of the three security guards, Thompson took the animal with her as she left Burkes' apartment. According to Thompson, she then returned to her own home and began removing one of Burkes' children from a car seat – while she was holding the child, a newborn, the dog suddenly jumped out of the vehicle and ran away. Thompson was unable to locate him.

On several occasions over the next few days, Thompson called Burkes to tell her about the dog, but to no avail. Three days after incident, the dog's owner, Fowler-Green, called the police. Fowler-Green stated that he had temporarily left Tito with Burkes to lift her spirits following her hospitalization, and that he had contacted the police as soon as he learned that the dog was missing. The three-day interlude between the loss of the dog and the police report was never explained.

Officer Jake Flickinger investigated Tito's disappearance and he called Thompson to inquire about the dog's whereabouts. Officer Flickinger testified at the trial that he was unable to remember much of the conversation, but he vaguely recalled that Thompson abruptly hung up the phone after saying she had "no idea" what he was referring to when asked about the dog. After that call, Officer Flickinger charged Thompson with theft.

Thompson, in turn, denied Officer Flickinger's characterization of her responses. She testified that the officer was hostile during the call, and that she only told him that she did not have possession of the dog. When asked at the trial why she did not report the dog missing or take any steps to retrieve him, Thompson stated that she had made several futile attempts to inform Burkes, but that her sister had refused to respond.

Thompson pointed out further that it would not have been practical for her to find the dog or report it missing because she did not know its name or who owned it, and she did not discuss losing the dog with Officer Flickinger

- 3 -

because his hostile tone made it seem unlikely that he would be helpful in that regard. Moreover, Thompson stated that she would have had no reason to steal the dog for herself.

At the conclusion of the trial, defense counsel moved for judgment of acquittal, arguing that no evidence had been presented showing that Thompson had an intent to permanently deprive Fowler-Green of his dog. The trial court denied the motion and found Thompson guilty of theft by taking, inferring the requisite criminal intent from Thompson's failure to locate the dog after it ran away:

> You opened the door. He runs away, and you say to yourself, oh well. I have an infant, and I have another kid. Nothing I can do. Oh, well. Then you don't tell the police so the police can make an effort and at least tell the owner, here is what happened to your dog. I find the whole thing appalling and disgraceful, and I find you guilty.

Trial Transcript, 11/16/2021, at p. 53.

At sentencing, Thompson apologized for losing the dog and again denied that she did so intentionally. The trial court acknowledged that Thompson may not have lost the dog on purpose, but she was nevertheless found criminally liable because the loss of the dog was "the result of [her] actions." *Id*. at p. 55. Thompson was found guilty and sentenced to probation for a period of two years. She was also directed to pay $1,200 in restitution to Fowler-Green.

Thompson filed a post-sentence motion for judgment of acquittal in which she contended that the evidence of criminal intent was legally

J-A06033-23

insufficient. The trial court denied the motion and Thompson timely filed an appeal. In its 1925(a) opinion, the trial court reiterated that the conviction should be upheld because Thompson's intent to deprive Fowler-Green of his dog could be inferred from Thompson's evasive answers when first contacted by police:

> Ms. Thompson may have intended to remove Tito from her sister's residence because she did not think it was a safe location for the dog. She may not have intended that the dog become lost, as she claimed Tito was. Ms. Thompson, however, did intend to permanently deprive Tito's rightful owner of him, despite her incredible testimony to the contrary. Such a conclusion was clear to the Court based on Ms. Thompson's testimony and Officer Flickinger's testimony that Ms. Thompson, in response to inquiry about Tito, denied knowing "what [he] was talking about and hung up on [him]."

Trial Court Opinion, at 5 (internal citations omitted).

Thompson argues in her appellate brief that her conversation with Officer Flickinger was not probative of her intent in removing Tito from her sister's house. The Commonwealth suggests that Thompson should have tried harder to find the dog after allowing him to escape, but in substance agrees that Thompson's conduct does amount to a crime. *See* Appellee's Brief, at 14-15.

"Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Murray***, 83 A.3d 137, 151 (Pa. 2013). In reviewing a sufficiency challenge, we determine "whether the evidence at trial, and all reasonable inferences derived therefrom, when viewed in the light most

- 5 -

favorable to the Commonwealth as verdict winner, are sufficient to establish all elements of the offense beyond a reasonable doubt." ***Commonwealth v. May***, 887 A.2d 750, 753 (Pa. 2005).

"Further, a conviction may be sustained wholly on circumstantial evidence, and the trier of fact – while passing on the credibility of the witnesses and the weight of the evidence – is free to believe all, part, or none of the evidence." ***Commonwealth v. Miller***, 172 A.3d 632, 640 (Pa. Super. 2017). "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." ***Id***. The "disbelief of a denial does not, taken alone, afford affirmative proof that the denied fact existed so as to satisfy a proponent's burden of proving that fact." ***Commonwealth v. Torres***, 766 A.2d 342, 345 (Pa. 2001) (quoting ***Commonwealth v. Graham***, 596 A.2d 1117, 1118 (Pa. 1991)).

A person commits the offense of theft "if [s]he unlawfully takes, or exercises unlawful control over, moveable property of another with intent to deprive him thereof." 18 Pa.C.S. § 3921(a). For the purposes of Section 3921, the term "deprive" is defined as:

> (1) To withhold property of another permanently or for so extended a period as to appropriate a major portion of its economic value or with intent to restore only upon payment of reward or other compensation;
>
> (2) to dispose of the property so as to make it unlikely that the owner will recover it.

18 Pa.C.S. §3901.

In the present case, the Commonwealth charged Thompson with theft because she removed a dog from an uninhabitable residence. The trial court seemed to accept that Thompson did not intend to steal the dog at that point, but found her guilty of theft because she did not report the animal missing and she denied having knowledge of what Officer Flickinger "was talking about" when he called her during his investigation.

Viewing the evidence in the light most favorable to the Commonwealth, we find that Thompson's intent to steal the dog was not proven beyond a reasonable doubt. Thompson first discovered the dog unexpectedly when performing a wellness check on her sister, who had been suffering from a mental illness. In the presence of three security guards, she then took the dog with her, along with her sister's two children, to protect the animal from potentially lethal conditions in her sister's home. The trial court recognized that up until that point, Thompson was "trying to do the right thing." Trial Transcript, 11/16/2021, at p. 53.

The two facts which the trial court found critical – Thompson's perceived lack of effort in recovering the dog and her denials to an officer – do not prove criminal intent. Allowing the dog to escape and doing little to find it was, at most, negligent, but it does not establish that Thompson ever intended to permanently deprive Fowler-Green of his dog at the time of the taking. To the contrary, the Commonwealth's witnesses corroborated that Thompson only wanted to remove the dog from the home for its own safety.

Thompson's conversation with Officer Flickinger also does not establish an intent to deprive an owner of property under Section 3921(a). The officer testified at trial that he did not remember much of the exchange. However, even if Thompson did falsely deny having knowledge of the incident, it would still not prove that she intended to commit a theft. *See Torres*, 766 A.2d at 345. Again, it was unrefuted that she initially tried to rescue the dog from starvation and poisoning.

As Thompson argues and as the Commonwealth wisely concedes, no reasonable inference from Thompson's conduct *after* the rescue of the dog establishes that a theft occurred. Thus, because the evidence was legally insufficient to sustain Thompson's conviction, the judgment of sentence must be overturned.

Judgment of sentenced vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/16/2023