J-S09023-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JUAN CARLOS AGUIAR | : | |
| | : | |
| Appellant | : | No. 2264 EDA 2025 |

Appeal from the Judgment of Sentence Entered July 8, 2025
In the Court of Common Pleas of Chester County Criminal Division at
No(s):  CP-15-CR-0002283-2024

BEFORE:   MURRAY, J., LANE, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LANE, J.:                         **FILED APRIL 14, 2026**

Juan Carlos Aguiar ("Aguiar") appeals from the judgment of sentence imposed following his jury conviction for simple assault.[1]  We affirm.

The Commonwealth charged Aguiar with simple assault and related offenses, in connection with a domestic dispute with his girlfriend, Amarylis Lopez ("the Victim").  This matter proceeded to a jury trial.  The Victim testified as follows.  On July 15, 2024, she was driving Aguiar to work when they began to argue.  Aguiar pulled at the steering wheel and "backhand[ed]" the Victim in the face.  N.T., 2/7/25, at 37.  When the Victim entered the parking lot, Aguiar took her cell phone.  The Victim began walking toward the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] *See* 18 Pa.C.S.A. § 2701(a)(1).

office building where Aguiar's mother worked to ask her for help. The Victim testified:

> As I'm going up the hill, I hear his feet, but I didn't see him and I don't . . . recall him hitting me or anything. I just know I'm getting up off the floor and then I see his mom's feet[. A]s she's coming up to me[,] everything blacked out [and then] I'm like, what am I doing on the ground?

*Id*. at 38. The Victim stood up and began to run, but slipped in mud. Aguiar slapped her in the face and told her he would not return her cell phone.

The Victim ran to her vehicle. When she started the ignition and put the vehicle in reverse, Aguiar "[dove] in through [the Victim's] window." *Id*. at 39. The Victim immediately exited the vehicle and ran into a nearby building. She attempted to call 9-1-1 but was not able to. The Victim then described:

> So, I run out. I was desperate and I see him coming up the hill and his mom is screaming, [Aguiar], no. And he comes up behind me and he kind of like straddled me with his arms[. I]t was hard for me to breathe[. H]e put his arm around my neck with my other arm up, and I was on my tippytoes walking back to my car trying to calm him down. . . .

N.T., 2/7/25, at 40. Aguiar repeatedly told the Victim that she "wasn't going to go nowhere." *Id*.

When they arrived back at the vehicle, the Victim told Aguiar that she was "done with this" and did not want to see him anymore. *Id*. at 41. Aguiar then punched her in the jaw with a closed fist. The Victim testified this was painful: "[M]y jaw . . . was burning from the inside[.]" *Id*. at 45. The Victim sat in the driver's seat and Aguiar followed her into the vehicle, sitting in the

front passenger seat. He told her that she "wasn't going the fuck nowhere" and that "he was going to kill [her] if [she] did." *Id*.

A police officer arrived and talked with Aguiar while he and the Victim were still seated inside the vehicle. The Victim silently "worded" the word, "help," and the police officer removed her from the vehicle and provided her with a witness statement form. *Id*. at 46. The Victim testified that when she wrote the statement, she "summed it up as small as [she] could" because there were only "a few lines" and she did not know she could write on the back. *Id*. at 47. The police officer asked for photographs of her injuries, which she provided later that day.

Valley Township Police Officer Bakari Green ("Officer Green") testified that he responded to a 9-1-1 call regarding a disturbance. In the parking lot, he observed Aguiar and the Victim sitting in a vehicle. Officer Green "asked what was going on and [Aguiar] just said they were having a verbal argument, normal girlfriend boyfriend disputes." N.T., 2/7/25, at 77. The Victim turned to Officer Green and "mouthed . . . that she needed help." *Id*. Officer Green "pulled her out of the vehicle" and the Victim told him that she "had been assaulted by [Aguiar]." *Id.* at 78. Officer Green observed that the Victim's chin was "swollen and bruised." *Id*. He then provided her with a witness statement form to complete. The Victim texted him photographs of her injuries later that same day, and that the injuries in the photographs were consistent with the injuries he observed at the scene.

Two witnesses testified for the defense. First, Adrian Aguiar ("Adrian"), Aguiar's brother, testified: (1) he previously had seen the photographs of the Victim's injuries in May 2024 — we note two months before the underlying incident; (2) the Victim had told him "[s]he was in a previous relationship that was abusive;" and (3) the Victim did not say that Aguiar "had given those injuries." N.T., 2/7/25, at 97, 101.

Aguiar also called his prior attorney, Timothy Deyrup, Esquire ("Attorney Deyrup"), who represented him at the preliminary hearing. At that hearing, the Victim recanted her allegations of the assault and testified that she and Aguiar had argued only over the telephone, not in person. *Id*. at 102-03. Aguiar did not testify in his own defense.

The jury found Aguilar guilty of simple assault. Separately, the trial court also found Aguiar guilty of harassment, and not guilty of disorderly conduct.[2] *See* N.T., 2/7/25, at 180.

On July 8, 2025, the trial court imposed a sentence of one to two years' imprisonment on the simple assault count.[3]

Aguiar filed a timely post-sentence motion, which the trial court denied. Aguiar then filed a timely notice of appeal and a timely court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

---

[2] 18 Pa.C.S.A. §§ 2709(a)(1), 5503(a)(1).

[3] The trial court determined that harassment merged with simple assault for purposes of sentencing. *See* N.T., 7/8/25, at 8.

- 4 -

Aguiar presents the following issues for our review:

1. Was the jury's verdict against the weight of the evidence presented with regard to the simple assault conviction?

2. Did the [trial] court's imposition of a sentence, which would far exceed half of the minimum term prior to the possibility for consideration for parole, violate 42 Pa.C.S. § 9756, and the [Pennsylvania Board of Probation and Parole's ("PBPP")] power pursuant to 61 Pa.C.S. §§ 6132 and 6137?

Aguiar's Brief at 3 (unnecessary capitalization omitted).

In his first issue, Aguiar challenges the weight of the evidence for his simple assault conviction.[4] He argues that the Victim's testimony at trial was inconsistent with her written statement, and that the testimony of his two witnesses contradicted the Victim's version of events.

Our standard of review when considering a challenge to the weight of the evidence is well settled:

A new trial may be granted on the ground that the verdict is against the weight of the evidence only where the verdict was so contrary to the evidence that it shocks the trial court's sense of justice. Our review of the denial of a motion for a new trial based on weight of the evidence is limited. We review whether the trial court abused its discretion in concluding that the verdict was not against the weight of the evidence, not whether the verdict, in this Court's opinion, was against the weight of the evidence.

Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings

_____

[4] Aguiar has preserved this issue for appellate review, as he raised it in his post-sentence motion. *See Commonwealth v. Weir*, 201 A.3d 163, 179 (Pa. Super. 2018) (providing that "[a] challenge to the weight of the evidence must be preserved either in a timely post-sentence motion, a written motion before sentencing, or orally prior to sentencing") (*citing* Pa.R.Crim.P. 607(A)(1)-(3)).

and reasons advanced by the trial judge . . . One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

***Commonwealth v. Weitzel***, 304 A.3d 1219, 1226-27 (Pa. Super. 2023) (citations omitted). We further note:

The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses. Resolving contradictory testimony and questions of credibility are matters for the finder of fact. It is well-settled that we cannot substitute our judgment for that of the trier of fact.

***Commonwealth v. Miller***, 172 A.3d 632, 642 (Pa. Super. 2017) (citations and quotation marks omitted).

The Crimes Code defines simple assault, in pertinent part, as follows: "[A] a person is guilty of assault if he . . . attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another." 18 Pa.C.S.A. § 2701(a)(1). The Crimes Code defines "bodily injury" as "[i]mpairment of physical condition or substantial pain." 18 Pa.C.S.A. § 2301. We note that at trial, the Commonwealth proceeded on a theory that Aguiar did cause bodily injury to the Victim. ***See*** N.T., 2/7/25, at 133.

On appeal, Aguiar argues that the Victim's testimony at trial was inconsistent with her written statement, where "she did not mention being touched prior to exiting the car. She further agreed that she did not mention running in the statement []or entering a building to call 911." Aguiar's Brief at 12 (citations omitted). Aguiar further avers that Adrian's testimony, about

- 6 -

the Victim's photographs originating from a prior abusive relationship, was "[c]ontrary to [the Victim's] testimony." ***Id***. Aguiar also points to Attorney Deyrup's testimony, that the Victim recanted her accusations against Aguiar at the preliminary hearing.

> In its opinion, the trial court reasoned:

> In the instant case, the jury chose to find the Commonwealth's witnesses credible and decided not to believe [Aguiar's] version of events. Based on a review of the evidence, the jury's finding does not "shock one's sense of justice." Again, even though [Aguiar] tried to claim that the [V]ictim was lying, the Commonwealth presented sufficient evidence for the jury to conclude that he did, in fact, commit the crimes for which he was found guilty. . . .

Order, 7/31/25, at 3 n.1.

We conclude that the trial court did not abuse its discretion when it determined the jury's verdict was not against the weight of the evidence. ***See Weitzel,*** 304 A.3d at 1226-27. The Victim testified that while she was driving, Aguiar "backhand[ed]" her, and after they exited the car, Aguiar did something — which she did not recall — which caused her to fall and "black[] out." N.T., 2/7/25, at 37-38. Aguiar also slapped her in the face and ultimately put his arms around her neck, obstructing her breathing. ***See id***. at 40. Finally, Aguiar punched the Victim's jaw with a closed first. ***See id***. Officer Green testified that he observed the Victim's chin was swollen and bruised. ***See id***. at 78. This testimony, if believed, established that Aguiar caused the Victim bodily injury, and thus committed simple assault against her. ***See*** 18 Pa.C.S.A. §§ 2301, 2701(a)(1).

The jury was free to find the Victim credible and to reject the testimony of Aguiar's witnesses. ***See Miller***, 172 A.3d at 642. We cannot reweigh the evidence or "substitute our judgment for that of the trier of fact." ***Id***. Thus, we conclude there was no abuse of discretion in the trial court's rejection of Aguiar's weight claim. Accordingly, no relief is due on Aguiar's first issue.

In his second issue, Aguiar challenges the trial court's imposition of one to two years' imprisonment for simple assault. He argues that the trial court intentionally structured the sentence so that "the time [he] would serve would far exceed half the statutory maximum," in violation of 42 Pa.C.S.A. § 9756. Aguiar's Brief at 14. Aguiar further claims that the trial court's sentence "deprived the [PBPP] of its exclusive jurisdiction to consider an inmate for review at or about his minimum term." ***Id***.

Aguiar claims this issue implicates the legality of his sentence, and thus, he may raise it for the first time on appeal. ***See*** Aguiar's Brief at 9. We disagree. Aguiar's claim presents a challenge to the discretionary aspects of sentencing. ***See Commonwealth v. Lee***, 876 A.2d 408, 411 (Pa. Super. 2005) (holding that a challenge to the maximum sentence imposed, where the appellant argues he "will not be paroled by the PBPP at expiration of his minimum sentence," implicates the discretionary aspects of his sentence).

> When an appellant challenges the discretionary aspects of his sentence, we must consider his brief on this issue as a petition for permission to appeal. Prior to reaching the merits of a discretionary sentencing issue,

>this Court conducts a four-part analysis to determine: (1) whether Appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902[,] 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether Appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code. 42 Pa.C.S.A. § 9871(b).

*Commonwealth v. Heaster*, 171 A.3d 268, 271-72 (Pa. Super. 2017) (citations and brackets omitted).

"In order to establish the existence of a substantial question, the appellant must show actions by the sentencing court inconsistent with the Sentencing Code[5] or contrary to the fundamental norms underlying the sentence process." *Lee*, 876 A.2d at 411 (citation and quotation marks omitted). "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Moury*, 992 A.2d 162, 170 (Pa. Super. 2010) (citation omitted).

"[W]hen the sentence is within the range prescribed by statute, a challenge to the maximum sentence imposed does not set forth a substantial question as to the appropriateness of a sentence under the guidelines." *Commonwealth v. Yeomans*, 24 A.3d 1044, 1049 (Pa. Super. 2011) (citation omitted). In *Yeomans*, this Court held that the appellant did not raise a substantial question, where he argued that based on the length of his

---

[5] *See* 42 Pa.C.S.A.§§ 9701-9799.75.

sentence, "the now well-known policies of the [PBPP] will require him to serve eighty-five percent of his maximum sentence." *Id*. Similarly in *Lee*, we declined to find a substantial question where the appellant argued his sentence was excessive because it was unlikely the PBPP would grant parole at his minimum sentence. *See Lee*, 876 A.2d at 412-13.

Here, Aguiar filed a timely notice of appeal. He also filed a timely post-sentence motion, which raised his present issue, and included in his brief a Pa.R.A.P. 2119(f) statement. However, we determine that Aguiar failed to raise a substantial question to invoke our review. *See Yeomans*, 24 A.3d at 1049. He does not claim that his maximum sentence itself exceeded the statutory limits. Instead, he avers the trial court "intentional[ly] structure[ed]" the sentence such that "the time he would serve would far exceed half the statutory maximum." Aguiar's Brief at 14. Accordingly, we decline to address Aguiar's challenge to his sentence on the merits.

For the foregoing reasons, none of Aguiar's claims merit relief. We affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/14/2026

- 10 -