J-S33040-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| KHALIF T. MOORE | : | |
| | : | |
| Appellant | : | No. 1418 EDA 2024 |

Appeal from the Judgment of Sentence Entered April 26, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0000373-2020

BEFORE:  BOWES, J., NICHOLS, J., and BECK, J.

MEMORANDUM BY BECK, J.:                              **FILED MAY 27, 2026**

Khalif T. Moore ("Moore") appeals from the judgment of sentence entered by the Philadelphia County Court of Common Pleas ("trial court") after a jury convicted him of third-degree murder, cruelty to animals, homicide by vehicle, accidents involving death or personal injury, and fleeing or attempting to allude police.[1]  Moore's counsel, Attorney George S. Yacoubian ("Counsel"), filed in this Court a petition to withdraw and a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), and *Commonwealth v. Santiago*, 978 A.2d 349 (Pa. 2009).  Upon review, we grant Counsel's petition to withdraw and affirm Moore's judgment of sentence.

**Facts and Procedural History**

---

[1] 18 Pa.C.S. §§ 2502(c), 5533(a); 75 Pa.C.S. §§ 3732(a), 3742(a), 3733(a).

The trial court summarized the facts of this case as follows:

On October 26, 2019, Philadelphia Police Narcotics officers set up surveillance in the vicinity of Fawn and Dauphin Streets in Philadelphia. N.T., 2/13/2024, at 48-50. At some point[, Moore] was observed at the scene, over the course of about 45 minutes. *Id.* at 53-54. During the surveillance, one of the marked back-up police vehicles, with uniformed officers, erroneously drove through the surveillance scene. *Id.* at 54. [Moore], who was on a bicycle, drove up to a green/blue minivan, entered the vehicle and drove off. *Id.* at 54-56. Video evidence of [Moore] on the bike and driving the minivan was introduced. *Id.* at 58-60, 66-67; Ex. C-46.

As [Moore] left the scene, the surveillance officer put out radio information to the uniformed backup officers with [Moore]'s description, a description of the vehicle and its location. *Id.* at 57, 77-79. Officer [DeBarberie] who was in one of the backup police cars, responded to the radio information by following the minivan. *Id.* at 79-80. At some point the officer turned on her vehicle's overhead lights and used the manual airhorn version of the vehicle's siren. *Id.* at 82-83. The officer observed the minivan begin to drift to one side, correct, then drift again. *Id.* at 83-84. The minivan appeared to be going the speed limit, although it was not coming to a full stop at stop signs. *Id.* at 84.

Another marked police vehicle with overhead emergency lights on approached the intersection of 10th and Berks Streets at about the same time as the minivan and Officer DeBarberie. *Id.* at 84-85. As this vehicle approached, the driver threw an object from the driver's side window, then the minivan pulled into a parking spot, with the first police vehicle stopping about a car-length behind. *Id.* at 87. The officers in the second vehicle—Roberston and Armstead—exited their vehicle with their weapons drawn, ordering the minivan driver to show his hands. *Id.* at 87, 151-52, 157-58. Officer Robertson was yelling these commands. *Id.* at 159. After about five seconds and as Officer DeBarberie exited her police vehicle, the minivan accelerated away. *Id.* at 88-89, 120-21. Officer DeBarberie reentered her vehicle and followed the minivan, which was traveling at a very high rate of speed, disregarding stop signs. *Id.* at 89, 94-95. Officers Robertson and Outterbridge (the driver), who were in the second vehicle, followed behind Officer DeBarberie. *Id.* at 151-52. Officer DeBarberie then heard an explosion-like sound and saw

smoke coming from the minivan, which was a few blocks ahead of her. She also saw two large objects pass under the minivan, as it continued to drive off. *Id.* at 89-90 96-97, 152-53. At the scene of the accident the officers observed a motionless dog (Rosie) on the side of the street and a male (Michael Canals) lying in the street further up. *Id.* at 90-91, 153. These events were captured on video which was played for the jury. *Id.* at 85-86, 100; Ex C-46. While Officer DeBarberie remained at the scene providing first aid to [Canals], Officers Robertson and Outerbridge tried to follow the minivan, but lost it. *Id.* at 153-54.

[Canals] was transported to the Temple Hospital where he was pronounced dead. The medical examiner found that the cause of death was blunt impact injuries to his head, neck and torso. N.T., 2/14/2024, at 175-76. Following the collision, Rosie the dog was observed to be in a lot of distress, crying, panting and "in really bad shape." Responding officers transported her to an emergency vet. N.T., 2/13/2024, at 172-73.

The skid marks left by the minivan at the scene of the collision were 87 feet long, and their nature indicated the skid marks were caused by the vehicle travelling at a high rate of speed attempting to stop abruptly. N.T., 2/14/2024, at 30-33, 58-60. The speed at the beginning of the skid marks was calculated to be no less than 47 MPH. *Id.* at 86-90. Parts of the minivan's grill[e] were recovered from the scene of the collision. *Id.* at 24, 36, 68. Those parts matched the minivan recovered by police. *Id.* at 48-49, 69-71.

The minivan was located later that day, at approximately 11:00 PM, in the 2000 block of Cambria Street. N.T., 2/13/2024, at 39. The minivan had damage to the hood and windshield, and [Canals'] headphones were stuck in the windshield. *Id.* at 46-47. The minivan was towed to a police facility, where it was searched pursuant to a search warrant. N.T., 2/14/2024, at 102. Part of the grille and the airbag control module (crash data recorder or CDR) were recovered during a search of the inside of the minivan. *Id.* at 71, 107, 119. A hair follicle was also recovered from the minivan grille[,] *id.* at 111-12, as well as latent fingerprints from inside and outside the minivan. *Id.* at 105. Video footage was also recovered from the vicinity of the abandoned minivan, showing the minivan pulling up and, after an unexplained gap in the video, [Moore] walking down the street, then getting picked up in another vehicle. *Id.* at 72-73, 82-85. Based upon still

- 3 -

photographs from the video, [Moore] was identified by investigators. *Id.* at 85.

A fingerprint taken from the minivan's driver side vanity mirror was suitable for comparison and was found to have 13 matching points with fingerprints taken from [Moore]. *Id.* at 135-39. Data was extracted from the airbag control module. *Id.* at 119-22. This data in the CDR showed that in the five seconds before the collision, the minivan was travelling between 59 and 64 MPH, and that the vehicle was one hundred percent on the throttle four seconds before the collision, with braking starting two seconds before the collision. *Id.* at 156-57. One hundred percent on the throttle means that the gas petal was pretty much touching the floor. *Id.* at 168. At the time of impact, the minivan was travelling between 46 and 57 MPH. *Id.* at 163.

Trial Court Opinion, 12/18/2024, at 2-5 (record citations modified).

On November 16, 2022, Moore's first trial ended in a mistrial because of a hung jury. Moore's retrial occurred in February 2024. On February 15, 2024, a jury convicted Moore of the above-referenced crimes. On April 26, 2024, the trial court sentenced Moore to an aggregate term of twenty to forty years in prison followed by one year of probation. Moore filed timely post-sentence motions, which the trial court denied. This timely appeal followed.

On April 18, 2025, Counsel filed an *Anders* brief and petition to withdraw as counsel in this Court. While our review of Counsel's filings revealed that he filed a proper petition to withdraw and a proper letter advising Moore of his rights, *see* Petition to Withdraw as Counsel, 4/18/2025, ¶¶ 5-6, Letter, 4/18/2025, his brief did not comply with the mandates of *Anders* and

*Santiago*.[2]  *See Commonwealth v. Moore*, 1418 EDA 2024, 2025 WL 3162145, at *3 (Pa. Super. Nov. 12, 2025) (non-precedential decision). Specifically, Counsel's *Anders* brief failed to state his reasons for concluding why the appeal is frivolous and did not articulate the relevant facts of record, controlling case law, and/or statutes on point that led him to conclude that the appeal is frivolous.  *See id.*; *see also Santiago*, 978 A.2d at 361; *Anders* Brief, 4/18/2025, at 6-13.  Instead, after setting forth the fifteen issues he raised in the Pa.R.A.P. 1925(b) statement, Counsel summarily concluded, with

_____

[2] Pursuant to *Anders*, when an attorney concludes that an appeal is wholly frivolous and wishes to withdraw as counsel, they must (1) petition the court for leave to withdraw stating that after making a conscientious examination of the record and interviewing the defendant, counsel has determined the appeal would be frivolous, (2) file a brief referring to any issues in the record of arguable merit, and (3) furnish a copy of the brief to defendant and advise him of his right to retain new counsel or to raise any additional points that he deems worthy of the court's attention.

*Commonwealth v. Burwell*, 42 A.3d 1077, 1083 (Pa. Super. 2012) (citations omitted).

Additionally, the Pennsylvania Supreme Court has determined that a proper *Anders* brief must

> (1) provide a summary of the procedural history and facts, with citations to the record; (2) refer to anything in the record that counsel believes arguably supports the appeal; (3) set forth counsel's conclusion that the appeal is frivolous; and (4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*Santiago*, 978 A.2d at 361.

- 5 -

little to no explanation, that he agreed with the trial court's analysis of each issue. *See Moore*, 2025 WL 3162145, at *3; *see also Anders* Brief, 4/18/2025, at 12-13. We therefore denied Counsel's petition to withdraw and ordered him to file either an advocate's brief or a compliant *Anders* brief. *See Moore*, 2025 WL 3162145, at *4. Counsel has now filed a proper *Anders* brief addressing each of the fifteen issues Moore purports to raise on appeal and, a petition to withdraw that likewise complies with the technical requirements provided by law. *See Anders* Brief, 12/8/2025, at 13-31; Petition to Withdraw, 12/8/2025; *see also Commonwealth v. Wimbush*, 951 A.2d 379, 382 (Pa. Super. 2008); *supra*, at n.2. Following several requests for time extensions to file responsive briefs by both Moore and the Commonwealth, this appeal is now ready for our review.[3]

Counsel identified the following issues in the revised *Anders* brief:

1. The trial court erred by precluding any reference to civil unrest and protests against police.

2. The trial court erred when it granted Commonwealth's motion in limine to limit references at trial to the police directives that were in effect in October 2019 and to preclude a line of inquiry into police directives on use of force. Specifically, the [trial court] erred in restricting and/or limiting evidence about the Philadelphia Police

---

[3] We note that after granting two requests by the Commonwealth for extensions of time to file its appellee's brief, we denied its third request on April 13, 2026. Undeterred, the Commonwealth filed a fourth motion for a thirty-day extension on April 22, 2025, and further sought "clarification" therein as to whether its brief should respond to Counsel's *Anders* brief or Moore's pro se response thereto. Commonwealth's Request for Relief, 4/22/2026. We deny the Commonwealth's motion.

Department Directives involving the use of force, drawing of weapons, and vehicle pursuits. Had this evidence been admitted, it would have established [Moore]'s lack of the requisite malice needed for third-degree murder.

3. The [trial court] erred when it limited and/or restricted questioning about events that took place on Fawn Street earlier in the day prior to the efforts to stop [Moore].

4. The [trial court] erred in restricting the evidence that would establish inconsistent statements by the police officers.

5. The [trial court] erred by not permitting jurors to take notes during the trial, in violation of Criminal Rules of Procedure Rule 644.

6. The trial court erred when it granted [the] Commonwealth's motion in limine to preclude the substance of an ongoing civil action filed on behalf of [Canals'] family against [Moore, the] City of Philadelphia, and specific [sic] Philadelphia Police.

7. The trial court erred when it allowed into evidence a prison telephone call to 267-588-[****] attributed to [Moore].

8. The trial court erred when it granted [the] Commonwealth's motion in limine to preclude the reports, and substance therein, by Internal Affairs and Police Board of Inquiry and decisions that occurred because of this case.

9. The jury was tainted, and was caused to have a misconception of the facts, when the Commonwealth made reference to, and suggested, that [Moore] was the subject/target of a criminal investigation and wrongful and/or unlawful conduct without any supporting evidence.

10. The [trial court] erred in restricting and/or limiting the questioning regarding the actions leading up to the attempts to stop [Moore], creating the false impression of wrongful conduct which caused confusion and influenced the assessment of the existence of malice.

11. The trial court erred by limiting the questioning of Officer Outterbridge and terminating the cross examination by defense counsel.

12. The [trial court] erred when it gave the jury instruction, and the answer to the question from the jury, by presentation of the "jury instruction on third-degree murder" rather than bringing the jury into the courtroom and reading the charge/instruction again. Not reading the instruction to the jury meant there was no assurance that every juror heard the definition or contemplated it in their deliberations.

13. The [trial court] erred when restricting the defense on its line of questioning regarding the videos showing the pursuit, which kept mitigating evidence regarding the absence of malice on the part of [Moore] from the jury.

14. The verdict on third-degree murder was against the weight of the evidence. Specifically, the jury failed to consider the evidence demonstrating a lack of malice, which is an essential element to the charge of third-degree murder.

15. The evidence was not sufficient to establish [Moore]'s guilt beyond a reasonable doubt on the third-degree murder offense. Specifically, the evidence was not sufficient to demonstrate the requisite level of malice required for third-degree murder.

*Anders* Brief, 12/8/2025, at 7-10. Many of Moore's fifteen claims overlap or are interrelated, which we address together to streamline our review.

**The Commonwealth's Motion in Limine**

Several of Moore's issues challenge the trial court's grant of the Commonwealth's motion in limine regarding several different evidentiary issues relating to the police officers' conduct prior to Moore's flight. We address each evidentiary claim in turn, but we begin with the well settled standard of review:

> The admissibility of evidence is a matter within the sound discretion of the trial court and will be reversed only where there is a clear abuse of discretion. Our standard of review of a challenge to an evidentiary ruling is therefore limited. Abuse of discretion is not merely an error of judgment, but rather where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill will.

**Commonwealth v. Wilson**, 273 A.3d 13, 19 (Pa. Super. 2022).

"The threshold inquiry with admission of evidence is whether the evidence is relevant." **Commonwealth v. Yale**, 249 A.3d 1001, 1022 (Pa. 2021) (citation omitted). "Evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence." **Id.** at 1022 (citing Pa.R.E. 401(a), (b)). "All relevant evidence is admissible, except as otherwise provided by law. Evidence that is not relevant is not admissible." Pa.R.E. 402. However, even if evidence is relevant, it may be excluded "if its probative value is outweighed by a danger of … unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

<u>Civil Unrest and Protests</u>

Moore first argues that the trial court erred in precluding him from referencing civil unrest and protests against police stemming from the murder of George Floyd that were ongoing at the time of Moore's crimes. **Anders** Brief, 12/8/2025, at 15-16. He asserts that such evidence was relevant to prove that he lacked malice when he struck and killed Canals and his dog as

he fled from police in fear because they approached with firearms drawn. *See id.*

The trial court determined that "[c]ivil unrest … and community views of policing simply had no place in this trial." Trial Court Opinion, 12/18/2024, at 9. It reasoned that in addition to not being relevant to prove Moore's state of mind, it would also be inflammatory and confusing to the jury. N.T., 2/9/2023, at 22-23.

The record reflects that Moore sought to introduce this evidence at trial as proof of his state of mind, that he was under duress while police were pursuing him, and that he lacked the malice necessary for a third-degree murder conviction when he struck Canals and his dog with his vehicle. *See* N.T., 2/9/2023, at 18-24. This Court has explained that with respect to third-degree murder, "[m]alice comprehends not only a particular ill-will, but also a wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured" and "there is a class of wanton and reckless conduct which manifests such an extreme indifference to the value of human life which transcends the negligent killing and reaches to the level of malice." *Commonwealth v. Vansyckel*, 341 A.3d 174, 179-80 (Pa. Super. 2025) (en banc). It is difficult to conceive how evidence of ongoing civil unrest relating to the police could tend to prove that Moore did not act with malice when he not only failed to comply with police directives when they attempted to detain

him during their narcotics surveillance operation, but he also fled from police at such a high rate of speed that it resulted in the death of Canals and his dog. *See id.*; *see also* N.T., 2/23/2024, at 89-90 96-97, 152-53. While evidence of civil unrest might explain Moore's mistrust of police, it simply does nothing to negate a finding of malice as he fled from the police following his commission of a crime with such a reckless disregard for life. *See Vansyckel*, 341 A.3d at 179-80; *see also* Pa.R.E. 401(a), (b). Therefore, there is no basis to find the trial court abused its discretion, and we agree with Counsel that Moore's first issue is frivolous.

Police Directives and Internal Affairs Investigation

In his second and fourth issues, Moore asserts that the trial court erred in prohibiting him from referencing police directives that were in place regarding the use of force on the night in question. *Anders* Brief, 12/8/2025, at 16-17. Similarly, in his eighth issue, Moore argues that the trial court erred in precluding him referencing police internal affairs investigations and decisions by the Police Board of Inquiry relating to the officers' conduct leading up to Moore's flight from police. *Id.* at 22-23. Moore sought to introduce evidence relating to police directives to demonstrate that they did not act in accordance with those directives when they drew their firearms on him and that consequently, he did not act with malice in killing Canals and his dog because he fled in fear of the police. *See* N.T., 2/9/2023, at 10-16.

The trial court again found this evidence irrelevant. Trial Court Opinion, 12/18/2024, at 11. The court determined that whether not police acted in accordance with directives regarding the use of force when they drew their weapons Moore, and any internal investigations that resulted from that conduct, was of little probative value as to whether Moore acted with malice when he struck Canals and his dog. *Id.*

Once again, there is no basis to find the trial court abused its discretion. The question of whether police should have drawn their firearms when they attempted to detain Moore bares no relationship whatsoever to the question of whether he acted with malice when he fled from police in the manner that he did, which resulted in the death of Canals and his dog. *See Yale*, 249 A.3d at 1022. We further observe that the trial court did permit Moore to cross-examine any police officer who testified at trial about whether they acted accordance with police directives and the investigations that resulted from their conduct for impeachment purposes. *See* N.T., 2/9/2023, at 16. We therefore conclude that Moore's second, fourth, and eighth issues are frivolous.

<u>The Narcotics Surveillance Operation</u>

In his third, ninth, and tenth issues, Moore argues that the trial court erred in restricting questioning relating to police surveillance of him prior to the motor vehicle pursuit that resulted in the deaths Canals and his dog. *Anders* Brief at 17-19, 23-25. The trial court determined that information

pertaining to Moore's involvement in narcotics transactions was irrelevant to the question of whether he committed third-degree murder, as he was not on trial for drug charges. Trial Court Opinion, 12/18/2024, at 11-12. Additionally, the trial court reasoned that too much testimony regarding the narcotics investigation could confuse the jury and distract them from the charges at hand. *See id.*

Not only did the trial court not abuse its discretion in its ruling, evidence of his identification as part of the narcotics surveillance would be evidence of other crimes committed by Moore, and potentially unfairly prejudicial to him, as it could have been misconstrued by the jury to show that he had the propensity to engage in criminal activity. *See* Pa.R.E. 403, *see also* Pa.R.E. 404(b)(1) ("Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."). The trial court's decision to limit testimony regarding the narcotics surveillance operation therefore likely benefitted Moore. Thus, Moore's third, nineth, and tenth issues are frivolous.

## The Canals Family's Civil Suit

In his sixth issue, Moore argues that the trial court erred in granting the Commonwealth's motion in limine to preclude testimony regarding the substance and details of the ongoing civil action of Canals' family against the Philadelphia Police Department. *Anders* Brief, 12/8/2025, at 20-21. At the hearing on the Commonwealth's motion limine, Moore's counsel agreed with

the Commonwealth that while he could reference the existence of the civil suit, he could not introduce evidence regarding its substance or the outcome, as it was still pending at the time of Moore's trial, and the trial court accepted the agreement of the parties on this issue. N.T., 2/9/2023, at 4-5. As Moore agreed with the Commonwealth to reference the existence but not discuss the substance of the civil litigation, and he did not object in any fashion to the trial court's ruling, he has failed to preserve this issue for appeal. *See Commonwealth v. Leaner*, 202 A.3d 749, 781 (Pa. Super. 2019) (stating that the lack of a contemporaneous objection to an evidentiary ruling results in waiver of the issue on appeal). Moore's sixth issue is therefore plainly frivolous.

<u>Moore's Prison Telephone Call</u>

In his seventh issue, Moore argues that the trial court erred in admitting portions of the recording of a prison telephone call he made during his first trial. *Anders* Brief, 12/8/2025, at 20. During the call, Moore admitted that that he was the driver of the vehicle that struck and killed Canals and his dog. *See* Exhibit C-61.

The trial court described the process it undertook in determining what portions of the recording to play for the jury:

> At the February 9, 2023, hearing on the Commonwealth's motion in limine to admit those portions of the phone call that are relevant to [Moore]'s identity as the driver, the [trial court] reviewed a transcript prepared by the Commonwealth, narrowed down which sections the Commonwealth sought to admit, and discussed with both counsel ways in which [Moore]'s references in

the call to his [first] trial could be mitigated. Regarding the sections the Commonwealth sought to introduce, the [c]ourt stated: "All right. I think that everything that's on here is either relevant or marginally relevant." N.T., 2/9/2023, at 40. The hearing then proceeded to a line-by-line Pa.R.E. 403 analysis of whether any of that relevant evidence was more prejudicial than probative, and what redactions were necessary to address the references to the prior trial. N.T., 2/9/23, at 40-57.

As a result of this line-by-line review and in some cases agreement of the parties, the [trial court] ruled on what portions of the phone call transcript were more probative than prejudicial and would be seen by the jury. *Id.* at 52-54. The [c]ourt specifically asked if there were "[a]ny objections to any of these rulings," to which counsel for [Moore] responded: "No, Your Honor." *Id.* at 54.

The transcript of the call, as redacted by the [trial court], was admitted into evidence at trial by stipulation as Exhibit C-61. N.T., 2/14/2024, at 178-79, 209-10. Counsel for [Moore] again stated that there was no objection. *Id.*

Trial Court Opinion, 12/18/2024, at 13 (record citations modified).

As our review of the record confirms that Moore did not object to the admission of the recording of the telephone call at issue as redacted by the trial court, he has failed to preserve this claim for review. *See Leaner*, 202 A.3d at 781. Thus, his seventh issue is frivolous.

**Other Evidentiary Claims**

Testimony of Officer Outterbridge

In his eleventh issue, Moore argues that the trial court erred in restricting the testimony of Officer Bryan Outterbridge, who was one of the police officers involved in the pursuit of Moore's vehicle. *Anders* Brief, 12/8/2025, at 25-26. Moore sought to introduce Officer Outterbridge's

testimony to show the speed at which Moore was driving, the duration of the pursuit, and Moore's state of mind (i.e., that he lacked malice when he struck and killed Canals). The trial court limited Officer Outterbridge's testimony because his testimony regarding the speed and duration of the pursuit was cumulative of at least two other police officers that testified at trial and because it was not probative of Moore's state of mind as he fled police. **See** Trial Court Opinion, 12/18/2024, at 15-18.

Once again, there is no basis to find the trial court abused its discretion. Our review of Moore's offer of proof during trial regarding Officer Outterbridge's testimony confirms the trial court's determination that the officer would have testified regarding the speed and duration of the police's pursuit of Moore. N.T., 2/15/2024, at 13-19. Not only was this evidence cumulative of the testimony of several other witnesses at trial, but it in no way would demonstrate that Moore did not act with malice when he struck and killed Canals and his dog (i.e., "a class of wanton and reckless conduct which manifests such an extreme indifference to the value of human life"). **See Vansyckel**, 341 A.3d at 179-80. We therefore conclude that Moore's eleventh issue is frivolous.

<u>Limiting Questions Pertaining to the Video of the Pursuit</u>

In his thirteenth issue, Moore argues that the trial court erred in limiting his questioning regarding videos showing the car chase. **Anders** Brief 12/8/2025, at 27. However, neither the trial court nor Counsel found any

support for this claim in the record. **See id.**; **see also** Trial Court Opinion, 12/18/2024, at 18-19. We have independently reviewed the record and likewise found no indication that the court restricted Moore's questioning relating to the videos or any objection from Moore on the subject. **See** N.T., 2/13/2024, at 68-73, 131-41, 158; N.T., 2/14/2024, at 90-97. We therefore conclude that Moore's thirteenth issue is frivolous.

**Other General Claims**

Pennsylvania Rule of Criminal Procedure 644

In his fifth issue, Moore argues that the trial court erred in informing the jury that they would not be permitted to take notes in violation of Pennsylvania Rule of Criminal Procedure 644. **Anders** Brief at 19-20. Rule 644 provides that "[j]urors shall be permitted to take notes during opening statements, the presentation of evidence, and closing arguments for their use during deliberations." Pa.R.Crim.P. 644(A). While the record supports Moore's claim that the trial court precluded the jury from taking notes during trial, N.T., 2/13/2024, at 11, the record further reflects that Moore did not object to this instruction. **See id.** at 11-17. It is well settled that the failure to make a timely and specific objection to a court's instruction results in waiver of that issue on appeal. **Commonwealth v. Smith**, 206 A.3d 551, 564 (Pa. Super. 2019). As Moore plainly failed to preserve this claim before the trial court, his fifth issue is frivolous.

Pennsylvania Rule of Criminal Procedure 646

In his twelfth issue, Moore argues that the trial court erred in providing written copies of the court's instruction on third-degree murder to the jury when the jury asked to hear that charge again. *Anders* Brief 12/8/2025, at 26-27. Moore contends that by not bringing the jury back into the courtroom and verbally rereading the instruction, there was no assurance that every juror heard the proper definition of third-degree murder and contemplated it in their deliberations. *Id.*

Pennsylvania Rule of Criminal Procedure 646 governs materials jurors may possess during deliberations and provides, in pertinent part, as follows:

> (B) The trial judge may permit the members of the jury to have for use during deliberations written copies of the portion of the judge's charge on the elements of the offenses, lesser included offenses, and any defense upon which the jury has been instructed.

Pa.R.Crim.P. 646(B).

As Rule 646 expressly grants the trial court the authority to give the jury a written copy of the charge for third-degree murder, we therefore discern no error in the court's decision to provide the instruction in writing when the jury asked to hear the charge again during deliberations. *See id.* Thus, Moore's twelfth issue is frivolous.

Sufficiency of the Evidence

In his fourteenth issue, Moore argues that the evidence was insufficient to sustain his conviction of third-degree murder. *Anders* Brief, 12/8/2025, at 30-31. "A claim challenging the sufficiency of the evidence is a question of

law." **Commonwealth v. Widmer**, 744 A.2d 745, 751 (Pa. 2000). "We review claims regarding the sufficiency of the evidence by considering whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." **Commonwealth v. Miller**, 172 A.3d 632, 640 (Pa. Super. 2017) (quotation marks and citation omitted). Furthermore, "a conviction may be sustained wholly on circumstantial evidence, and the trier of fact—while passing on the credibility of the witnesses and the weight of the evidence—is free to believe all, part, or none of the evidence." **Id.** "In conducting this review, the appellate court may not weigh the evidence and substitute its judgment for the fact-finder." **Id.**

To establish third-degree murder, the Commonwealth must prove that the defendant killed another person with malice aforethought. **Vansyckel**, 341 A.3d at 179; **see also** 18 Pa.C.S. § 2502(c). As we explained hereinabove, "Malice comprehends not only a particular ill-will, but also a wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." **Commonwealth v. Santos**, 876 A.2d 360, 363 (Pa. 2005) (brackets, quotation marks, and citation omitted).

> Where malice is based on a reckless disregard of consequences, it must be shown that the defendant consciously disregarded an unjustified and extremely high risk that [his] actions might cause death or serious bodily injury; at the very least, the conduct must

be such that one could reasonably anticipate death or that serious bodily injury would likely and logically result.

***Vansyckel***, 341 A.3d at 179 (citation omitted).

The Commonwealth presented evidence that as police, who were in uniform and marked cars, exited their vehicles and attempted to detain Moore in relation to their narcotics investigation, he suddenly drove away in his vehicle at a high rate of speed. N.T., 2/13/2024, at 150-52. Shortly thereafter, police saw smoke near Moore's vehicle and saw what they thought was a bumper slide across the road. ***Id.*** at 153. When police reached the area where they thought the bumper had come to rest, they found Canals and his dog lying in the street. ***Id.*** The police observed no other vehicles in the vicinity. ***Id.*** Additionally, the Commonwealth presented testimony revealing that the street on which Moore fled was in a residential neighborhood where the speed limit was no more than twenty-five miles per hour and contained numerous stop signs at which Moore did not stop. ***Id.*** at 95. The Philadelphia Police Department's accident investigation unit determined that during the pursuit of Moore's vehicle he was traveling between forty-seven and sixty-five miles per hour with the accelerator pressed to the floor as he fled from police. N.T., 2/14/2024, at 87, 156, 158.

Thus, the record reflects that Moore knowingly fled from police at a high rate of speed through a residential neighborhood while completely disregarding traffic laws. During his flight from police Moore struck and ultimately killed Canals and his dog. The record therefore contains more than

sufficient evidence that Moore acted with malice in killing Canals, as he consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury. **See Vansyckel**, 341 A.3d at 179. Consequently, we conclude that his challenge to the sufficiency of the evidence of his third-degree murder conviction is frivolous.

Weight of the Evidence

In his fifteenth and final issue, Moore argues that the verdict was against the weight of the evidence. **Anders** Brief, 12/8/2025 at 29-30. "A weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." **Commonwealth v. Thompson**, 93 A.3d 478, 490 (Pa. Super. 2014) (citation and brackets omitted). "Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion." **Id.** In this case, Moore did not raise a weight claim in his post-sentence motion or otherwise preserve such a claim before the trial court. **See** Post-Sentence Motion, 5/1/2024. As Moore has waived any challenge to the weight of the evidence, his final issue is frivolous.

**Moore's Pro Se Response**

Moore filed a pro se response to Counsel's **Anders** brief. Therein, he raises no independent claims, but instead purports to rehash five of the fifteen

issues raised by Counsel in the **Anders** brief.[4]  Moore, however, failed to file a complete brief with this Court, as his brief ends in the middle of his statement of the case.  **See** Moore's Reply Brief, 3/10/2026, at 15.  His filing therefore contains little, and for some issues no, argument developing his claims and provides us with no basis upon which to grant him relief.  **See** **Commonwealth v. Bradley**, 232 A.3d 747, 756 (Pa. Super. 2020) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.").

## Conclusion

Petition to withdraw granted.  Judgment of sentence affirmed. Commonwealth's application for relief denied.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date:  May 27, 2026

---

[4]  These claims include challenges to several of the trial court's evidentiary decisions, its decision to limit the scope of Officer Outterbridge's testimony, to provide the jury with the written instruction for third-degree murder, and the sufficiency of the evidence to sustain his third-degree murder conviction. **See** Moore's Reply Brief, 3/10/2026, at i-ii.